Kim R. Lepore, Esq. (AZ Bar #019130)
klepore@zbslaw.com
Joseph J. Tirello, Esq. (AZ Bar #033371)
jtirello@zbslaw.com
**ZIEVE, BRODNAX & STEELE, LLP**
3550 North Central Avenue, Suite 625
Phoenix, AZ 85012
Phone: (602) 282-6188
Attorneys for Defendants Bayview Loan Servicing, LLC and The Bank Of New York
Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The
CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates,
Series 2007-17CB

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Wolfson,<br><br>                Plaintiff,<br><br>        vs.<br><br>Bayview Loan Servicing, LLC and The Bank Of New York Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates, Series 2007-17CB,<br><br>                Defendants. | Case No. CV-17-8258-PCT-DWL<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

        Defendants Bayview Loan Servicing, LLC ("Bayview") and The Bank Of New York
Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The CWALT,
Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates, Series 2007-
17CB ("BONYM") (collectively, "Defendants"), respectfully request that the Court enter
summary judgment in favor of Defendants.  There is no genuine issue as to any material fact
associated with the counts in Plaintiff's First Amended Complaint ("Complaint").
Defendants are, therefore, entitled to entry of judgment as a matter of law.

-1-

1    This motion is supported by the following Memorandum of Points and Authorities, the
2    exhibits attached hereto, and all of the pleadings on record, all of which are incorporated
3    herein by reference.

4                    **MEMORANDUM OF POINTS AND AUTHORITIES**

5                                       **INTRODUCTION**

6    This action arises out of foreclosure proceedings concerning Plaintiff's personal
7    residence located at 1716 Tatum Place, Prescott, AZ 86301, and legally described as

8         LOT 394, OF CLIFF ROSE UNIT 6, ACCORDING TO THE PLAT OF
9         RECORD IN THE OFFICE OF THE COUNTY OF RECORDER OF
10        YAVAPAI COUNTY, ARIZONA IN BOOK 44 OF MAPS, PAGE 6

11   (the "Subject Property").  Plaintiff is determined to improperly and without any legal basis,
12   stall and delay this foreclosure despite **not paying on his loan for almost 9 years**.  First, he
13   filed for Chapter 7 Bankruptcy protection.  Then, he filed a state court action wherein he
14   challenged Defendant BONYM's right to foreclose.  Plaintiff lost that challenge at the state
15   court level and he appealed to the Arizona Court of Appeals, who affirmed the dismissal of
16   his Complaint. In doing so, the Court of Appeals specifically stated that Defendant BONYM
17   is owed the outstanding balance under the promissory note and Deed of Trust at issue in this
18   case as a result of Plaintiff's default. (Ex. 3 at ¶11.)  The Court of Appeals also addressed
19   Plaintiff's claims under Arizona Revised Statutes ("ARS") section 33-420, and held that the
20   Assignment from MERS was not void and did not contain any material misrepresentations.
21   (Ex. 3 at ¶¶13-15.)

22   In this action, Plaintiff is again challenging Defendant BONYM's right to foreclose
23   despite the appellate court decision.  Defendants are entitled to summary judgment because
24   most of Plaintiff's claims are barred by the doctrines of claim preclusion and res judicata.
25   Additionally, the remaining claims fail because Plaintiff has not demonstrated a genuine
26   issue of material facts and Defendants are entitled to judgment as a matter of law.

27
28

**STATEMENT OF FACTS**

On or about May 11, 2007, Plaintiff executed and delivered to non-party Quicken Loans Inc., ("Quicken"), a promissory note in the amount of $272,000.00 (the "Note"). (Ex. 1 at ¶6, Ex. A; Doc. 33 at ¶11.)   The Note is endorsed in blank and BONY is the current holder of the Note. (Ex. 1 at ¶7.) To secure the indebtedness under the Note, Plaintiff executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Quicken, a Deed of Trust (the "Deed of Trust").  The Deed of Trust was recorded on May 21, 2007 as instrument number 4138770, in book 4508, page 240, in the Official Records of Yavapai County and encumbers the Subject Property.[1] (Ex. 1 at ¶8, Ex. B.) The Note and Deed of Trust are collectively referred to herein as the "Loan."

Plaintiff made payments on the Loan through May 1, 2010. (Ex. 1 at ¶15, Ex. F.)  On or about June 1, 2010, Plaintiff defaulted under the Note and Deed of Trust by failing to pay his monthly mortgage payment. (Ex. 1 at ¶9; Doc. 33 at ¶18.)

On November 18, 2010, the Note and Deed of Trust were assigned to BONYM. The Assignment of Deed of Trust was recorded on November 19, 2010, as instrument number 2010-4428747 in book 4778, page 56 in the Official Records of Yavapai County (the "Assignment"). (Ex. 1 at ¶10, Ex. C.)

The servicing rights of the Loan were transferred to Bayview effective October 16, 2012. (Ex. 1 at ¶11.)

On or about May 26, 2017, Bayview, as BONYM's loan servicer and attorney in fact, appointed Joseph J. Tirello, Jr., ("Tirello") as the new trustee under the Deed of Trust and provided Tirello with written instructions that the loan was in default and that Bayview intended to foreclose. (Ex. 1 at ¶12.)

---

[1] Defendants request that this Court take judicial notice of all exhibits referenced herein that are documents recorded on title in the Official Records of Yavapai County. *See, Jacobsen v. HSBC Bank USA, N.A.*, 713 Fed. App'x 679, 680 (9th Cir. 2018) ("The district court did not abuse its discretion by taking judicial notice of the title documents.")

1   The Substitution of Trustee, officially substituting Tirello as the new trustee under the

2   Deed of Trust, was recorded on July 3, 2017, as instrument number 2017-0033812. (Ex. 1 at

3   ¶13, Ex. D.)  On the same date, Tirello, as the substitute trustee, caused to be recorded a

4   Notice of Trustee's Sale as instrument number 2017-0833813 in the Official Records of

5   Yavapai County. (Ex. 1 at ¶14, Ex. E.)

6   The Loan was never been accelerated. (Ex. 1 at ¶16.) The Loan has never been paid

7   off, satisfied or settled. (Ex. 1 at ¶18.) The total amount due to pay off the loan, as of

8   September 28, 2018, was $425,784.01, plus accruing interest and other advances paid by

9   Bayview to protect the security interest. (Ex. 1 at ¶19.)

10   **STANDARD OF REVIEW**

11   A court must grant summary judgment if the pleadings and supporting documents,

12   viewed in the light most favorable to the nonmoving party, show there is no genuine

13   dispute as to any material fact and the movant is entitled to judgment as a  matter of law.

14   FRCP 56(a); See, *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

15   "Only disputes over facts that might affect the outcome of the suit under the governing

16   law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*,

17   477 U.S. 242, 248 (1986). Summary judgment is appropriate against a party who "fails to

18   make a showing sufficient to establish the existence of an element essential to that party's

19   case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

20   *Catrett*, 477 U.S. 317, 322 (1986). And, the moving party must set out specific facts

21   showing a genuine dispute for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*,

22   475 U.S. 574, 585-588 (1986).

23   **LEGAL ANALYSIS AND ARGUMENT**

24   **I.**    **Plaintiff Admitted All Matters Requested In Defendants' Requests For**

25   **Admission.**

26   Plaintiff failed to serve written answers or objections to the Requests for Admission

27   propounded on Plaintiff by Defendants within the time limit provided by the Federal Rules of

28   Civil Procedure. FRCP Rule 36 provides, in part, as follows: "[a] matter is admitted unless,

within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FRCP Rule 36(a)(3).

Defendants served Requests for Admission upon Plaintiff on January 19, 2018. (Ex. 2 at ¶4, Ex. A.) Defendant also filed a Notice of Service of Discovery Requests on January 23, 2018. (Ex. 2 at ¶5, Ex. B.) Plaintiff failed to serve any answers or objections within thirty (30) days of service, plus five days for mailing. (*Id*. at ¶6)  On March 27, 2018 – *one month after the responses were due* - Plaintiff's counsel sent an email to Defendants' counsel asking him to agree to a "belated request for an extension" of time to serve responses to the discovery requests. (*Id*. at ¶7, Ex. C.)  Defendants' counsel denied that request in writing the same day and advised Plaintiff's counsel the requests were deemed admitted. (*Id*. at ¶8, Ex. D.)  Because Plaintiff failed to timely answer or object to the Requests for Admission and because the parties did not stipulate to a longer time for Plaintiff to respond, the Requests for Admission are deemed admitted. The following are some of Plaintiff's admissions.

1.  Plaintiff admits he signed the Note.

2.  Plaintiff admits he signed the Deed of Trust.

3.  Plaintiff admits that the Deed of Trust provides the lender with the option to invoke the power of sale.

4.  Plaintiff admits that he breached the Note and Deed of Trust by failing to pay his monthly mortgage payments.

5.  Plaintiff admits that MERS was an agent of Quicken and had the authority to execute an Assignment of Deed of Trust.

6.  Plaintiff admits that Quicken or its successors had the ability to substitute the trustee under the Deed of Trust.

7.  Plaintiff admits that Defendants did <u>not</u> breach the implied covenant of good faith and fair dealings.

8.  Plaintiff admits that BNYM is the current beneficiary under the Deed of Trust.

9.  Plaintiff admits that the Assignment recorded on November 19, 2010 is valid.

**MOTION FOR SUMMARY JUDGMENT**

1
2
        10.     Plaintiff admits that the Substitution of Trustee recorded on July 3, 2017 is
                valid.

3
4
        11.     Plaintiff admits that the Notice of Trustee's Sale recorded on July 3, 2017 is
                valid.

5
## II.     Many Of Plaintiff's Claims Are Barred By Res Judicata.

6
        "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of

7
any claims that were raised or could have been raised in [a] prior action." *Owens v. Kaiser*

8
*Found. Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks

9
omitted). "The doctrine is applicable whenever there is (1) an identity of claims, (2) a final

10
judgment on the merits, and (3) identity or privity between parties." *Id*. (internal quotation

11
marks omitted).  *See also In re Gen. Adjudication of All Rights to Use Water In Gila River*

12
*Sys. & Source*, 212 Ariz. 64, 69–70 ¶ 14, 127 P.3d 882 (2006).  "Res Judicata will not be

13
defeated by minor differences of form, parties or allegations where the controlling issues

14
have been resolved in a prior proceeding in which the present parties had an opportunity to

15
appear and assert their rights." *Kuhns v. Corestates Financial Corp*., 998 F.Supp. 573, 575

16
(E.D. Pa. 1998).  There is clearly an identity of claims since Plaintiff brought identical claims

17
here as he did in the previous lawsuit, styled *Ronald Wolfson v. Bank of America, NA, et al*,

18
case number P1300CV201100207, seeking the same relief for the same real property and

19
Deed of Trust. (Ex. 3, generally.) There was a final judgment on the merits of the previous

20
action as the complaint was dismissed and that dismissal was affirmed on appeal. (*Id*.)

21
        There is also identity and privity between the parties in both actions. BONYM was a

22
Defendant in the prior action, as was Bank of America. Although Bayview was not a

23
Defendant in the prior action, Bayview is the successor in interest to Bank of America's

24
interest in the Loan as the new servicer. See, *Headwaters Inc. v  U.S. Forest Serv*., 399 F.3d

25
1047, 1053 (9th Cir. 2005) (noting that privity exists when two parties have "transferred

26
rights with respect to a particular legal interest."). Further, several allegations made against

27
BONYM in that action are identical to the ones here, to wit: that BONYM lacked authority to

28

1  initiate a trustee's sale of the property. The Court of Appeals upheld BONYM's lien and

2  right to foreclose. (Ex. 3 at ¶¶3, 7 and 11.)

3      In the prior lawsuit, Plaintiff asserted claims for quiet title and declaratory relief.

4  Plaintiff alleged, as he does here, that BONYM has no interest in the Subject Property

5  because of the purportedly faulty assignment from MERS to BONYM.   Specifically, he

6  claimed that the note and deed of trust are inseparable and because MERS lacked authority to

7  transfer the note, the assignment of the note and beneficial interest under the deed of trust

8  was invalid. (*Id.* at ¶¶7 and 8.)  The Court of Appeals found that, "MERS is the mortgagee of

9  record and may assign the note and the deed of trust…." (*Id.* at ¶11.)  The Court of Appeals

10 further found that, "[a]s the lender's assignee of record, [BONYM] is owed all outstanding

11 amounts on the note…" (*Id.*)  Because the Court of Appeals found that the assignment from

12 MERS to BONYM was valid and Plaintiff owes the debt to BONYM, all claims in the

13 Complaint based upon the alleged invalid Assignment are barred by res judicata.

14      In the prior lawsuit, Plaintiff also asserted a claim under ARS § 33-420, just as he

15 does in this action.  In the previous case, Plaintiff alleged that the Assignment and other

16 recorded documents contained material misstatements or false claims because MERS had no

17 authority to transfer the note to BONYM. (*Id.* at ¶13.) Plaintiff also alleged that the

18 recordings were executed in the wrong order and by parties not authorized to sign them.  The

19 Court of Appeals affirmed the trial court's dismissal of the ARS §33-420 claim, finding that

20 the recorded documents were not void because they were all signed on the same day and

21 recorded in the proper order.  More importantly, the Court of Appeals found that "all of the

22 executing entities apparently had the authority to sign the recorded documents, so the

23 documents were not void." (*Id.* at ¶15.)  Finally, the Court of Appeals rejected Plaintiff's

24 "contention that material misrepresentation or false claims exist in the recorded documents

25 because that contention stems from [Plaintiff's] argument that MERS did not have authority

26 to assign the note to [BONYM]." (*Id.* at ¶15.)

27      Here, Plaintiff again alleges in the Complaint that the loan was not legally conveyed to

28 BONYM, and the Substitution of Trustee and Notice of Trustee's Sale are based on

-7-

1  "unauthorized assignments" by "employees of third party vendors and loan servicers

2  misrepresenting their authority." (Doc. 33 at fn. 1 and ¶¶63 and 64.) This is in direct

3  contradiction of the Court of Appeals Decision.

4       Because Plaintiff's claims in the Complaint are premised upon the same allegations

5  that were rejected by the Superior Court and the Court of Appeals in the prior lawsuit and

6  appeal therefrom, those claims are precluded in this action and are barred by res judicata.

7  **III.**   **Plaintiff's Bankruptcy Discharge Does Not Affect Defendant BONYM's Lien On**

8  **The Property Or Its Ability to Foreclose.**

9       Plaintiff alleges throughout the Complaint that Defendants are attempting to collect a

10  discharged debt by foreclosing on the property. (Doc. 33 at ¶¶38-40, 42, 44, 45, 47, 61, 62,

11  79, 83, 84, 89, 100, 103-107, 122 and 131.)  However, as Defendants' counsel has advised

12  Plaintiff's counsel several times, the United States Supreme Court has confirmed that liens

13  secured by a mortgage or deed of trust on real property pass unaffected through the

14  bankruptcy case.

15  
16  > [T]he creditor's lien stays with the property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee….

17  > Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so. *See*

18  > *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive

19  > bankruptcy"); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes

20  > only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*").

21  
22  *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S. Ct. 773, 778 (1992). *See also, Long v. Bullard*,

23  117 U.S. 617, 620-621, 6 S.Ct. 917, 918 (1886) (holding that a discharge in bankruptcy does

24  not release real estate of the debtor from the lien of the mortgage created by him before the

25  bankruptcy.).

26       Because a bankruptcy discharge of the debt does not discharge or release the lien

27  secured by the real property and does not prohibit a lender from foreclosing on the deed of

28  trust, all allegations in the Complaint that Defendants are prohibited from foreclosing on the

1  Deed of Trust because Plaintiff obtained a bankruptcy discharge should be summarily

2  rejected.

3  **IV.    Plaintiff's Count One for False Recordings Under ARS § 33-420 Fails Because**

4  **Plaintiff Admitted The Recordings Are Valid And Is Barred By Res Judicata.**

5       Plaintiff alleges that the following three documents violate ARS § 33-420: (1) the

6  assignment recorded in 2012[2], (2) the Substitution of Trustee, and (3) the Notice of Trustee

7  Sale (collectively, the "Recorded Documents"). (Doc. 33 at ¶52.) To support this conclusion,

8  Plaintiff claims that the assignment "could not have occurred as represented" because the

9  legal transfer to the trust had to have occurred on or before the closing date for the CWALT

10 2007-17CB trust, which was June 29, 2007. Plaintiff further alleges that the assignment

11 claimed to transfer the Note and Deed of Trust, but MERS could not transfer the Note

12 because MERS testifies across the nation that it does not have any interest in promissory

13 notes. Finally, Plaintiff alleges that the "false Recorded Documents" have deprived Plaintiff

14 of the benefits of the bankruptcy discharge by putting the Subject Property at risk." (Doc. 33

15 at ¶62.)

16       First and foremost, as stated in Section II above, Count One is barred by *res judicata*

17 because the Arizona Court of Appeals has already found that the Assignment from MERS to

18 BONYM is valid and BONYM is owed all outstanding amounts on the note.  Next, Plaintiff

19 admitted that (1) MERS was an agent of Quicken, (2) MERS had the authority to execute the

20 Assignment of the Deed of Trust, (3) Quicken and its successors had the ability to substitute

21 the trustee under the Deed of Trust, (4) BONYM is the current beneficiary under the Deed of

22 Trust, and (5) the Recorded Documents are valid. *See*, Section I above at ¶¶ 5, 6, and 8-11.

23 Further, as stated in Section III above, a mortgage lien on real property passes through a

24 bankruptcy discharge, and therefore, the discharge did not protect the Subject Property from

25 _____

26 [2] Plaintiff points out that the Assignment recorded in 2012 was recorded after the
   appellate court decision in the prior lawsuit and thus, is fair game in this lawsuit.

27 However, MERS had already assigned its interest in the Deed of Trust to BONY in 2010,
   as the Court of Appeals held, and therefore, the Assignment recorded in 2012 had no

28 effect on title.

1  the risk of being foreclosed upon. In fact, an assignment does not even have to be recorded

2  prior to a trustee's sale. *See, In re Vasquez*, 266 P.3d 1053, 1055 (Ariz. 2011).

3  Additionally, to state a claim under ARS § 33-420 based on a misstatement of fact or

4  false claim, Plaintiff must plausibly allege that (1) Defendants knowingly recorded or caused

5  to be recorded a document containing a misstatement of fact or false claim and (2) the

6  misstatement or false claim was material to him. *Sitton v. Deutsche Bank Nat'l Trust. Co*.,

7  233 Ariz. 215, 311 P.3d 237, 243 (Ariz. Ct. App. 2013). The Arizona Court of Appeals has

8  concluded that recorded assignments that contain misstatements related to the identity of the

9  beneficiary or trustee of a Deed of Trust are generally not material because they typically do

10 not alter a borrower's obligations pursuant to the loan. Id. at 242-43. Plaintiff admits he has

11 failed to make payments on the Loan since 2010 and therefore, he was subject to foreclosure

12 no matter who was assigned as beneficiary or as substitute trustee. The alleged

13 misrepresentations in the Assignment, Substitution of Trustee and Notice of Trustee's Sale

14 were not material to Plaintiff and Defendants are entitled to summary judgment as to Count

15 One.

16 **IV.  <u>Count Two For Breach Of The Implied Covenant Of Good Faith And Fair</u>**

17 **<u>Dealing In The Note And Deed Of Trust Contracts Fails Because Plaintiff Admitted</u>**

18 **<u>That Plaintiff Did Not Breach The Implied Covenant.</u>**

19 In Count Two, Plaintiff alleges that Defendants breached the implied covenant of

20 good faith and fair dealing in the Note and Deed of Trust for a multitude of reasons.  (Doc.

21 33 at ¶100.) First, Plaintiff claims the entities seeking to enforce the Loan should be those

22 legally entitled to do so and should use good faith in initiating and proceeding with

23 foreclosure. Then, Plaintiff asserts a laundry list of other "reasons" why Defendants breached

24 the implied covenant, all of which are contained within a single paragraph with no factual

25 support.

26 Defendants are entitled to summary judgment on this Count for many reasons, but

27 most importantly, because **Plaintiff admits that Defendants did not breach the implied**

28 **covenant** of good faith and fair dealings. See, Section I at ¶7.  Plaintiff further admits that (1)

-10-

he signed the Note and the Deed of Trust, which provided the lender with the option to invoke the power of sale; (2) he breached the Note and Deed of Trust by failing to pay his monthly mortgage payment; (3) MERS, as an agent of Quicken, had the authority to execute an Assignment of the Deed of Trust; (4) Quicken and its successors had the ability to substitute the trustee under the Deed of Trust; (5) BONYM is the current beneficiary with the right to invoke the power of sale; and (6) the Recorded Documents are valid.

Plaintiff also fails to identify a breach of any of the terms in the Note or Deed of Trust. Any inquiry into the implied Covenant of Good Faith and Fair Dealing begins with a review of the contract itself to determine what the parties did agree to. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383, 710 P.2d 1025, 1040 (1985). The covenant, however, "does not extend beyond the terms of the contract at issue." *Carter v. HSBC Mortg. Corp.*, CV 10-1002-PHX-MHM, 2010 WL 4792638, at *3 (D. Ariz. Nov. 18, 2010) (citing *Best v. Henderson*, 2008 WL 2154795, *5 (Ct.App. May 20, 2008). Consequently, Plaintiff's breach of the Implied Covenant of Good Faith and Fair Dealing claim fails as a matter of law since he cannot establish a breach of the terms of the Note or Deed of Trust.

Although Plaintiff's admission is an independent basis to enter summary judgment on Count Two, the other "reasons" as to how Defendants breached the implied covenant fail as a matter of law. First, Plaintiff claims Defendants breached the covenant by attempted to collect a discharged debt without authority via misleading statements. (Doc. 33 at ¶100.) Plaintiff does not provide any facts to clarify or support this assertion; however, assuming Plaintiff is referring to foreclosing after a bankruptcy discharge, this issue was addressed in Section III above. Case law is well settled that a bankruptcy discharge of the debt does not release the lien secured by the real property and does not prohibit a lender from foreclosing on the deed of trust.

Second, Plaintiff claims Defendants are attempting to collect a time-barred debt. (Doc. 33 at ¶100.) However, the Court of Appeals has already found that Plaintiff *owes* the debt to BONYM. And, the Loan records show that the Loan has never been accelerated. (Ex. 1 at

1  ¶16.) Further, Defendants are not collecting on a debt; Defendants are rightfully foreclosing

2  on the lien securing the debt.

3      The six year statute of limitations, under A.R.S. § 12-548, applies to foreclosure

4  actions as well as to actions on the underlying debt.  *See De Anza Land and Leisure Corp. v.*

5  *Raineri*, 137 Ariz. 262, 266, 669 P.2d 1339 (Ct. App. 1983).  In Arizona, the "Continuous

6  Breach Theory" is an exception to the statute of limitations.  *See Ancala Holdings, LLC v.*

7  *Price*, 220 Fed.Appx. 569, 572 (9th Cir. 2007) (unpublished).  Under this theory, a cause of

8  action accrues each time a party fails to perform as required under the contract.  *See Id*.

9  (citing *Builders Supply Corp. v. Marshall*, 88 Ariz. 89, 95, 352 P.2d 982, 986 (1960)).

10  Phrased another way, each time the debtor fails to make a payment when it becomes due, a

11  separate breach occurs and a separate cause of action accrues. *Id*. In this case, each month

12  that Plaintiff missed a payment, he committed a new breach. Therefore, Plaintiff's claims

13  arising out of the statute of limitations defense fail as a matter of law.

14      Also in Arizona, if an installment contract contains an optional acceleration clause, the

15  statute of limitations begins to run when a lender exercises the optional acceleration clause

16  by demanding the full payment of the note before all installments become due. *Navy Fed.*

17  *Credit Union v. Jones,* 187 Ariz. 493, 930 P.2d 1007, 1009 (Ct. App. 1996).  Plaintiff has the

18  burden of establishing the accrual date for purposes of computing the statute of limitations.

19  *See Estate of Page v. Litzenburg*, 177 Ariz. 84, 91, 865 P.2d 128, 135 (App. 1993); *Selby v.*

20  *Karman*, 20 Ariz.App. 206, 511 P.2d 650 (1973). And, a creditor must undertake some

21  affirmative act to make clear to the debtor it has accelerated the obligation. *See, e.g., In re*

22  *Crystal Props.,* Ltd., 268 F.3d 743, 749–50 (9th Cir.2001).

23      Plaintiff has not provided any admissible evidence that the loan was, in fact,

24  accelerated in 2010. The only evidence relied upon by Plaintiff is a  letter sent to Plaintiff by

25  Bank of America in 2010, stating the full amount of the loan "would be accelerated" unless

26  all amounts due were not paid. (Doc. 33 at ¶19, Ex. C.) Plaintiff does not allege that the loan

27  was actually accelerated or that he received a letter notifying him that the Loan has been

28  accelerated. To the contrary, Plaintiff admits that the 30 day notice of default, as required by

-12-

paragraph 22 of the Deed of Trust, was not sent to Plaintiff.  This is further evidence that Defendants did not take an affirmative act to accelerate the Loan. In fact, BONYM sent Plaintiff a Notice of Default and Intent to Accelerate on April 27, 2016. (Doc. 33 at ¶38, Ex. I.)  Certainly, a loan cannot be accelerated if it was already accelerated.

Third, Plaintiff claims Defendants are "hiding the identity of the true beneficiary" by misrepresenting the investor of the loan through letters and false documents. (Doc. 33 at ¶100.) The Court of Appeals confirmed that BONYM is the beneficiary of the Deed of Trust and is owed the debt *before* Plaintiff filed the Complaint. The Court of Appeals also found that the recorded documents did not contain material misrepresentations or false claims. Thus, the title documents have been clear since 2010 that BONYM is the investor.

Fourth, Plaintiff claims that Defendants allowed an entity, not the Note Holder and Lender, to declare a default, to accelerate the debt, and to initiate foreclosure. (Doc. 33 at ¶100.) The Court of Appeals' decision confirms that Recorded Documents did not contain false claims. Therefore, the Deed of Trust was properly assigned to BONYM, BONYM properly substituted a new trustee under the Deed of Trust, and the new trustee properly recorded a notice of trustee's sale. All were proper entities and all were authorized under the Deed of Trust and Deed of Trust statutes to take such actions.

Fifth, Plaintiff claims the lender did not notify the trustee, in writing, that the loan was in default, and of an election to foreclosure. (Doc. 33 at ¶100.)  Plaintiff has not provided any evidence to support this allegation. Furthermore, this allegation is directly contradicted by the Loan records. Defendant Bayview confirms in the attached Affidavit that Bayview, as BONYM's servicer and attorney-in-fact, gave the trustee written notice that the loan was in default and that it was electing to foreclose. (Ex. 1 at 12.)

Finally, Plaintiff claims that Defendants sought to proceed to a trustee's sale on invalid documents (the "Recorded Documents") and by recording the false Recorded Documents. (Doc. 33 at ¶100.) Again, these allegations of false Recorded Documents are premises on the alleged false assertions in the Assignment which the Court of Appeals has

1  affirmed is valid. For all of the reasons stated in this Section IV, this Court should grant

2  summary judgment as to Count Two.

3  **V.**   **Count Three For Fraudulent Misrepresentation Fails Because Defendants Did**

4  **Not Misrepresent The Status Of The Debt Or Its Ability To Foreclose.**

5       Plaintiff claims that Defendants made false representations regarding the status of the

6  debt by stating the debt was discharged in bankruptcy ant then stating that they had authority

7  to enforce the Deed of Trust. (Doc. 33 at ¶¶103 and 104.) These representations were not

8  false or contradictory.   As stated in Section III above, a debt can be discharged in

9  bankruptcy, and the lender still has the authority to enforce the Deed of Trust through

10  foreclosure.

11       Plaintiff is confusing a discharge of his obligation to pay a debt in bankruptcy with

12  satisfaction of the debt itself.  Plaintiff argues that because Defendants stopped reporting the

13  loan to the credit bureaus and stopped sending him monthly mortgage statements, he

14  "believed" the loan was satisfied. Plaintiff's erroneous belief does not make Defendants'

15  representations false. Lenders are prohibited by federal laws from certain credit reporting and

16  sending certain notices to the borrower after a bankruptcy discharge.  The lack of reporting or

17  notices does not mean the loan simply vanished. Plaintiff has not shown any evidence that

18  the loan was satisfied or paid off or "settled." Bayview's letters to Plaintiff consistently state

19  that the debt exists but Plaintiff's personal obligation was discharged in bankruptcy.  (Doc.

20  33 at Exs. I, K and L.)

21       To make a claim for fraudulent misrepresentation, Plaintiff must show (1) a

22  representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or

23  ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the

24  manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's

25  reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.

26  *Echols v. Beauty Built Homes, Inc.* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982), (citing

27  *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966)).  Plaintiff alleges that Defendants

28  falsely feigned authority to foreclose.  However, the Court of Appeals has already upheld

-14-

1   Defendant BONYM's right to foreclose. (Ex. 3 at ¶¶2, 3, 7 and 11.)  Consequently, there is

2   no viable claim for fraudulent misrepresentation.

3   **VI.   Count Four For Breach of Contract And Payment/Satisfaction Fails Because**

4   **Plaintiff Admitted He Breached The Note and Deed Of Trust And The Allegations Are**

5   **Speculative.**

6   Plaintiff claims, by way of mere conclusory statements, that the holder of the Note has

7   already been paid and the lender must release the deed of trust. (Doc. 33 at ¶112-115.)

8   Plaintiff claims that the "PSA, the Servicing Agreement, and the Master Purchase Agreement

9   terms indicate that [BONYM] had insurance to cover losses suffered by defaults on loans and

10  servicing rights purchased from CWALT, Inc." Plaintiff then concludes that Defendants have

11  been received payments "from Plaintiff/Borrower, PMI or other insurance coverage or

12  associated contracts" so they have already been paid. Plaintiff has not asserted any facts to

13  supports this wild conclusion. The Loan records clearly reflect that the loan has not been paid

14  off by Plaintiff, from insurance or otherwise. (Ex. 1 at ¶¶18 and 19.)

15  Furthermore, Plaintiff is merely speculating that some other party *may have*

16  compensated Bayview. "Speculation is not enough, especially naked speculation of this

17  variety." *Schayes v. Orion Fin. Grp., Inc.*, No. CV-10-02658-PHX-NVW, 2011 WL

18  3156303, at *4 (D. Ariz. July 27, 2011) (citing, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

19  555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

20  **VII.   Count Five for FDCPA Fails Because Bayview Did Not Attempt To Collect The**

21  **Debt.**

22  A claim under the FDCPA must be brought "within one year from the date on which

23  the violation occurs." 15 U.S.C. § 1692k(d); see also, *Lyons v. Michael & Assocs.*, 824 F.3d

24  1169, 1171 (9th Cir. 2016). Plaintiff filed this action on November 7, 2017. Therefore, any

25  allegations of alleged attempts to collect a debt that occurred prior to November 7, 2016 are

26  barred by the one year statute of limitations. Further, the discovery rule does not apply

27  because all of Plaintiff's allegations concern letters or phone calls sent to him, which would

28  have been discovered upon his receipt of same.

-15-

1      Plaintiff does not provide any facts related to any telephone call made by Bayview to

2  Plaintiff. Plaintiff does, however, reference letters or notices sent to him by Bayview.

3  Plaintiff alleges that Exhibits H and I attached to the Complaint are examples where Bayview

4  "regularly" misrepresented the debt and "dunned" Plaintiff for amounts not due.  (Doc. 33 at

5  ¶120.) Exhibit H is a letter from Bayview to the Arizona Attorney General in response to a

6  consumer complaint filed by Plaintiff. That letter is dated September 4, 2014 and therefore, is

7  outside the statute of limitations. (Doc. 33 at ¶36, Ex. H.)  Exhibit I is Notice of Default and

8  Intent to Accelerate sent by Bayview to Plaintiff, dated April 26, 2016. This letter is also

9  barred by the statute of limitations.  (Doc. 33 at ¶38, Ex. I.) Moreover, Exhibit H expressly

10 stated that Plaintiff had no personal liability on the Note. Exhibit I is required by paragraph

11 22 of the Deed of Trust, and included the following disclaimer: "TO THE EXTENT YOUR

12 OBLIGATION HAS BEEN DISCHARGED … IN A BANKRTUPCY PROCEEDING,

13 THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT

14 CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN

15 INDEBTEDNESS AS YOUR PERSONAL OBLIGATION." (Doc. 33 at Ex. I.)

16     Plaintiff further alleges that Exhibit K, L and M attached to the Complaint were

17 attempts to collect the debt. Exhibit K is a Statement of Breach sent from Bayview to

18 Plaintiff on June 29, 2017. Exhibit L is the Notice of Sale dated July 3, 2017. Exhibit M is

19 the Substitution of Trustee dated July 3, 2017. (Doc. 33 at ¶¶42, 44 and 46, Exs. K, L and

20 M.)  All three of these letters are required by the Deed of Trust statutes as part of a non-

21 judicial foreclosure proceeding. See, ARS §§33-804, 33-808, 33-809, respectfully. These are

22 not attempts to collect a debt because non-judicial foreclosure of a deed of trust is not debt

23 collection under the FDCPA. See *Diessner v. Mortgage Electronic Registration System*, 618

24 F. Supp. 2d 1184, 1189 (D. Ariz. May 18, 2009); *Mansour v. Cal-W. Reconveyance Corp.*,

25 618 F. Supp. 2d 1178, 1182 (D. Ariz. Apr. 21, 2009).

26     The only other letter referred to by Plaintiff in the Complaint that was sent after

27 November 2016 is a "Debt Validation Notice," allegedly dated July 7, 2017. Plaintiff claims

28 to have attached a copy of that notice to the Complaint as Exhibit N, but no such exhibit is

1  attached. Thus, Defendants are unable to respond to this allegations. Plaintiff does, however,

2  state that the Notice was sent by the trustee under the Deed of Trust. Thus, it could not be an

3  attempt by Bayview to collect a debt.

4  **VIII.**   **Count Six for Violations of RESPA Fails Because It Is Partially Barred By The**

5  **Statute Of Limitations And Because Bayview Conducted Reasonable Investigations**

6  **And Responded to Plaintiff.**

7           There is a three-year statute of limitations for violations of RESPA. *See* 12 USC §

8  2614. Plaintiff alleges that he sent Bayview qualified written requests, notices of error and

9  requests for information and that Bayview failed to adequately respond or perform a

10  reasonable investigation. (Doc. 33 at ¶138.) The first allegation in Count Six is that Bayview

11  improperly assessed late fees within the 60-day grace period for transfers of servicing under

12  RESPA. (Id. at ¶140.)  Servicing transferred to Bayview in 2012 and therefore, this claim is

13  barred by the statute of limitations. Plaintiff then refers to letters sent to and from Bayview in

14  2012, 2013 and as late as September 2014. (Doc. 33 at ¶29-38.) Again, these letters are

15  barred by the statute of limitations.

16           The only qualified written request sent to Bayview is not attached to the Complaint,

17  but Plaintiff admits that Bayview responded in a letter dated June 7, 2016. (Doc. 33 at ¶¶ 39

18  and 41, Ex. J.) Plaintiff merely alleges that, "Bayview's June 7, 2016 response demonstrated

19  no effort by Bayview to conduct a reasonable investigation of the error and did not provide

20  documentation supporting the complete change in position from 2012." (*Id*. at ¶41.) Because

21  Plaintiff's letter is not attached to the Complaint, Bayview is unable to ascertain whether it

22  was an actual "qualified written request" pursuant to RESPA and is unable to determine

23  whether its response was complete. Exhibit J shows that Bayview did, however, respond and

24  accurately stated that the loan is due for June 1, 2010 and subsequent payments, that Bayview

25  is the sub-servicer of the loan on behalf of the master servicer Bank of America, and that the

26  owner of the loan is BONYM. Bayview also included a copy of the account activity

27  statement detailing all transactions and their effective dates, and copies of the Note, Deed of

28  Trust and Assignment.

1    Plaintiff also alleges a laundry of list of items that Bayview did improperly, e.g.

2  "Payments to Bank of America prior to the transfer of servicing to Bayview were misapplied.

3  Bayview failed to correct Aurora's[3] errors and adopted them. Bayview improperly put

4  payments in suspense. Bayview improperly paid their [sic] own claimed 'advances' first....

5  Bayview improperly charged late fees. Bayview improperly pyramided fees. Bayview

6  improperly managed the escrow account and imposed lender-placed insurance where

7  unwarranted. Bayview refused payment and sent them back to Plaintiffs without applying

8  them to the loan. Bayview improperly adopted *Aurora's* errors without investigation or

9  diligence, and thereby ratified them." (Doc. 33 at ¶¶149-152 and 160-164.) Many of

10 Plaintiff's laundry list of errors can be summarily rejected because Plaintiff did not make any

11 payments on the loan while Bayview was servicing the loan. As a result, Bayview could not

12 have "improperly put payments in suspense," or "improperly paid their own claimed

13 'advances' first."

14   Plaintiff does not allege *any* specific facts to support these conclusions regarding

15 Bayview and does not specify when these alleged errors occurred. Therefore, Defendants

16 cannot determine which, if any, allegations are barred by the statute of limitations, and

17 cannot adequately respond to the remaining allegations, if any.

18 **IX.    Defendants Are Entitled To Reasonable Attorney Fees And Costs.**

19   Defendants are entitled to reasonable attorney fees and costs incurred in defending

20 this action pursuant to ARS §§ 12-341 and 12-341.01. Plaintiff's Complaint challenges

21 Defendants' right to enforce the Deed of Trust through foreclosure. Thus, this action is

22 based on a contract, the Deed of Trust, which authorizes an award of attorneys' fees and

23 costs.

24                              **CONCLUSION**

25   For the foregoing reasons, Defendants respectfully request that this Court enter

26 summary judgment in their favor and against Plaintiff. In the alternative, Defendants request

27 _____

28 [3] There is no evidence that an entity named Aurora ever had an interest in or serviced the
   Loan.

1  that this Court enter partial summary judgment, as appropriate in their favor and against

2  Plaintiff.  Defendants also request an award of their reasonable attorney's fees and costs

3  incurred in defending this action..

4        **DATED** this 25th day of January, 2019.

5                                **ZIEVE, BRODNAX & STEELE, LLP**

6

7                                KIM R. LEPORE

8                                *Attorney for Defendants*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on the date stated above, a copy of the foregoing has been

3   transmitted electronically to the CM-ECF filing system for filing and transmittal along

4   with copies transmitted to the following parties via the CM-ECD system.

5

6   COPY mailed this same day to:

7   Beth Findsen, Esq,
    The Law Offices of Beth K. Findsen, PLLC
8   7279 East Adobe Drive, suite D-120
    Scottsdale, AZ 85255
9   Counsel for Plaintiff

10  COURTESY COPY mailed this same day to:

11  Honorable Dominic W. Lanza
    United States District Court
12  Sandra Day O'Connor U.S. Courthouse, Suite 621
    401 West Washington Street, SPC 46
13  Phoenix, AZ 85003-2151

14

15  */s/ Courtney Perry*

16

17

18

19

20

21

22

23

24

25

26

27

28

**File # 17003357**                                   **MOTION FOR SUMMARY JUDGMENT**

**Wolfson v. Bayview, et al.**

**CV-17-8258-PCT-DWL**

<u>TABLE OF CONTENTS</u>

1.     Affidavit of Randall Jackson in support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment

2.     Affidavit of Kim R. Lepore in support of Motion for Summary Judgment or, in the alternative, Partial Summary Judgment

3.     Arizona Court of Appeals Memorandum decision filed March 11, 2014

4.     Excerpts from Deposition of Myron De Sa, Designee for Bayview Loan Servicing, LLC

# EXHIBIT 1

1   Kim R. Lepore, Esq. (AZ Bar #019130)
    klepore@zbslaw.com
2   Joseph J. Tirello, Esq. (AZ Bar #033371)
    jtirello@zbslaw.com
3   **ZIEVE, BRODNAX & STEELE, LLP**
    3550 N . Central Ave, Suite 625
4   Phoenix, AZ 85012
    Phone: (602) 282-6188
5   Attorneys for Defendants Bayview Loan Servicing, LLC and The Bank Of New York
    Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The
6   CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates,
    Series 2007-17CB
7
                        **UNITED STATES DISTRICT COURT**
8
                             **DISTRICT OF ARIZONA**
9

10
    Ronald Wolfson,                          Case No. CV2017-012573
11
                    Plaintiff,
12
            vs.                              **AFFIDAVIT OF** Randall Jackson
13                                           **IN SUPPORT OF MOTION FOR**
    Bayview Loan Servicing, LLC and The      **SUMMARY JUDGMENT OR, IN THE**
14  Bank Of New York Mellon fka The Bank     **ALTERNATIVE, PARTIAL**
    Of New York, As Trustee For The          **SUMMARY JUDGMENT**
15  Certificateholders Of The CWALT, Inc.,
    Alternative Loan Trust 2007-17CB
16  Mortgage Pass-Through Certificates,
    Series 2007-17CB,
17
18                  Defendants.

19
    State of _Pennsylvania_ )
20
    County of _Montgomery_ )
21

22      I, _Randall Jackson_ being duly sworn upon oath, depose and state as follows:

23      1.      I am employed as a ___AVP___ of Bayview Loan Servicing ("Bayview").

24      2.      Bayview is the loan sub-servicer for The Bank Of New York Mellon fka The

25  Bank Of New York, As Trustee For The Certificateholders Of The CWALT, Inc.,

26  Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates, Series 2007-17CB

27  ("BONYM") in connection with the loan described below.

28      3.      In that capacity, I am familiar with the loan servicing industry, including

    applicable procedures and operations for the servicing of loans in default on behalf of

    **File No. 17003357**

1  investors. I am also familiar with the loan servicing records maintained by Bayview on behalf

2  of BONYM for the subject loan described below.  I am able to access information and

3  records pertaining to the servicing of loans as maintained by Bayview in the ordinary course

4  of its business.  I am familiar with how such information is entered and stored as it pertains

5  to the servicing of loans by Bayview.  Based upon my training and experience at Bayview, it

6  is my understanding that such information is entered at or near the time of the events

7  described in the loan servicing records.  Access to such records is limited to those with

8  authorization from Bayview.

9       4.    I am authorized to execute this Affidavit on behalf of Bayview and have

10  personal knowledge of the facts set forth in this Affidavit based upon my review of the loan

11  records and other business records referenced herein, which records are kept and maintained

12  by Bayview in the ordinary course of its business as the mortgage loan servicer.

13       5.    I have reviewed and am familiar with Bayview's records pertaining to the

14  subject loan, identified in Bayview's system as loan number XXXXXX3635 (the "Loan").

15       6.    My review of the Loan servicing records reflect that on or about May 11, 2007,

16  Ronald Wolfson ("Wolfson") entered into an agreement with Quicken Loans Inc.

17  ("Quicken"), pursuant to which he borrowed the sum of $272,000.00, as evidenced by a

18  promissory note (the "Note") in that amount. A true and correct copy of the Note is attached

19  hereto as Exhibit A.

20       7.    The Note was endorsed by Quicken in favor of Countrywide Bank, FSB.

21  Countrywide Bank, FSB endorsed the Note in favor of Countrywide Homes Loans, Inc..

22  Countrywide Home Loans, Inc. endorsed the Note in blank. BONYM owns and is the current

23  holder of the Note.

24       8.    My review of Bayview's records also reflects that Wolfson executed a Deed of

25  Trust (the "Deed of Trust")[1] secured by real property located at 1716 Tatum Place, Prescott,

26  AZ 86301 (the "Property"). The Trustee under the Deed of Trust is Title Source, Inc. and the

27  Beneficiary is Mortgage Electronic Registration Systems, Inc., as nominee for Quicken, the

28  Lender. The Deed of Trust was recorded on May 21, 2007 as instrument number 4138770, in

---

[1] The Note and Deed of Trust are collectively referred to herein as the "Loan."

book 4508, page 240, in the Official Records of Yavapai County. A true and correct copy of the Deed of Trust is attached hereto as Exhibit B.

9. My review of the Loan records confirms that Wolfson is in default of the terms of the Loan by failing to make all payments due thereunder from and after June 1, 2010.

10. My review of Bayview's records reflects that the beneficial interest in the Deed of Trust was assigned to BONYM by way of an Assignment of Deed of Trust recorded on November 19, 2010, as Instrument No. 2010-4428747 in book 4778, page 56 in the Official Records of Yavapai County. A true and correct copy of the Assignment is attached hereto as Exhibit C.

11. My review of Bayview's records reflects that Bayview became the servicer[2] of the Loan effective October 16, 2012.

12. My review of Bayview's records reflects that on May 26, 2017, Bayview, as BONYM's loan servicer and attorney-in-fact, appointed Joseph J. Tirello, Jr., ("Tirello") as the new trustee under the Deed of Trust and provided Tirello with written instructions that the loan was in default and that Bayview intended to foreclose.

13. My review of Bayview's records reflects that a Substitution of Trustee, substituting Tirello as the substitute trustee under the Deed of Trust, was recorded on July 3, 2017, as instrument number 2017-0033812.in the Official Records of Yavapai County. A true and correct copy of the Substitution is attached hereto as Exhibit D.

14. My review of the Loan records reflects that Tirello recorded a Notice of Trustee's Sale on July 3, 2017 as instrument number 2017-0833813 in the Official Records of Yavapai County. A true and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit E.

15. My review of the Loan records reflects that Wolfson made regular payments on the Loan through May 1, 2010. A true and correct copy of the Loan payment histories are attached, collectively, hereto as Exhibit F.

---

[2] Bank of America is the master servicer of the Loan and Bayview is the sub-servicer; however, Bayview is responsible for the day to day servicing of the Loan and is considered the servicer.

16.     My review of the Loan records reflects that the Loan has never been accelerated.

17.     My review of the Loan records reflects that the debt was discharged in Wolfson's Chapter 7 Bankruptcy.

18.     My review of the Loan records reflects that the Loan has not been paid off, satisfied or otherwise settled.

19.     My review of the Loan records also reflects that the total balance due on the Loan as of September 28, 2018 was $425,784.01. This amount consisted of the principal balance of $272,000.00, interest from May 1, 2010 of $125,773.63, and $28,010.38 in escrow advances and other recoverable amounts, as authorized by the Deed of Trust. This amount continues to increase due to accruing interest at the rate of 5.5% and additional advances paid by Bayview to protect the security interest.

I have personal knowledge of the foregoing facts based upon my review of the information and documents referenced above and records maintained by Bayview in the ordinary course of its business.  If called as a witness, I can and would testify competently thereto.

I declare the foregoing under the penalty of perjury.

**DATED** this ___24___ day of January, 2019.

By: Randall Jackson

Its: AVP

Sworn to (or affirmed) and subscribed before me this _24th_ day of January, 2019.

Notary Public                                    **Lynda Buehler**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lynda Buehler, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Dec. 27, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

File No. 17003357

# EXHIBIT A

REDACTED

Wolfson, Ronald

MERS MIN: 100039032113116301

# INTEREST-ONLY PERIOD FIXED RATE NOTE

May 11, 2007                           Prescott                           AZ
   [Date]                              [City]                           [State]

1716 Tatum Place
Prescott, AZ 86301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $272,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month. This payment will be for Interest only for the first        120        months, and then will consist of principal and interest.

I will make my monthly payment on the        1st        day of each month beginning on        July 1, 2007        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to Interest before Principal. If, on        June 1, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 553154, Detroit, MI 48255-3154 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,246.67        for the first        120        months of this Note, and thereafter will be in the amount of U.S. $ 1,871.06        . The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE Single Family-Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01 (rev. 9/06)          1462645612
Wolters Kluwer Financial Services
VMP®-836N (0608)
Page 1 of 3                    Initials:

EXHIBIT
12 Nesi
9-28-18

PENGAD 800-631-6989

unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



q03211311630 0140 175 0203

VMP®-836N (0629)

Page 2 of 3

Form 3271 1/01 (rev. 8/95)
MW

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Ronald Wolfson_ _____ 05/11/2007 (Seal)
Ronald Wolfson                              -Borrower

_____ (Seal)
                                    -Borrower

WITHOUT RECOURSE _____ (Seal)
Pay To The Order of              -Borrower
Countrywide Bank, FSB

QUICKEN LOANS, INC.
By _____

SCOTT JOHNSON _____ (Seal)
CAPTURE MANAGER              -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

610 REDACTE N  001  001

*[Sign Original Only]*

q903211311630 0140 175 0303

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_
MICHELE S.JOLANDER
EXECUTIVE VICE PRESIDENT

# EXHIBIT B

Ana Wayman-Trujillo, Recorder
OFFICIAL RECORDS OF YAVAPAI COUNTY   05/21/2007 02:15P
TITLE SOURCE INC          007       4128770

B-4508 P-248
B-4508 P-248
Page 1 of 10
007      4128770



Return To:
Quicken Loans Inc.
Quicken Loans, Inc.
20555 Victor Parkway
Livonia   48152



**Subject DT**

Prepared By:
Logay Farris

Quicken Loans, Inc.
20555 Victor Parkway
Livonia, MI 48152
1-800-226-6308

2596687

———————[Space Above This Line For Recording Data]———————

Return to,
Yavapi

DEED OF TRUST
MIN 100039032113116301

R# 24056669

Title Source, Inc.
1450 W. Long Lake Road
Suite 400
Troy, MI 48098
888-TITLE55

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          May 11, 2007                          ,
together with all Riders to this document.
(B) "Borrower" is Ronald Wolfson, a single man

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 1716 Tatum
Place , Prescott, AZ  86301
(C) "Lender" is Quicken Loans Inc.

Lender is a                              Corporation
organized and existing under the laws of        the State of Michigan

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003  1/01 (rev. 6/02)
1462645641
-6A(AZ) (0303)
Page 1 of 16       Initials (hu)

VMP MORTGAGE FORMS - (800)521-7291

B-4500 P-240
Page   2 of 19
507      4139770

Lender's mailing address is 20555 Victor Parkway, Livonia, MI  48152

(D) "Trustee" is TITLE SOURCE, INC

. Trustee's mailing address is

1450 WEST LONG LAKE RD, STE 400, TROY, MI  48098

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated       May. 11, 2007
The Note states that Borrower owes Lender Two Hundred Seventy Two Thousand and
00/100                                                                    Dollars
(U.S. $272,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than       June 1, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [XX] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [XX] Other(s) [specify] |
| | | Legal Attached |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

0333 174 0235

-6A(AZ) (0106)                    Page 2 of 18          Initials: _____      Form 3003  1/01  (rev. 8/02)

Wolf00015

B-4586 P-240
Page: 3 of 15

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Yavapai :

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD

Parcel ID Number: 105-04-191   which currently has the address of
1716 Tatum Place   [Street]
Prescott   [City], Arizona 86301   [Zip Code]

("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

-6A(AZ) (0304)   Page 3 of 15   Initial   Form 3003   1/01 (rev. 6/02)

B-4508 P-240
Page: 4 of 19
DOT        4138770

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(AZ) (0.0.04                                        Page 4 of 15                          Form 3003   1/01 (rev. 8/02)

Wolf00017

B-4508 P-240
Page: 5 of 19
DOT    4108770

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





Page 5 of 19     Form 3003   1/01   (rev. 6/02)

Wolf00018

B-4508 P-240
Page 5 of 19
DOT 4138770

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(AZ) (0305)         Page 6 of 15         Initials: ___         Form 3003   1/01 (rev. 6/02)

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



Page 7 of 16



Form 3003  3/01  (rev. 8/02)

Wolf00020

B-4508 P-240
Page   8 of 19
001      4138770

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

    

-6A(AZ) (0206)                Page 6 of 16                Initials ___        Form 3003   1/01  (rev. 6/02)

Wolf00021

B-4506 P-240
Page: 3 of 15
807    013877C

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



Page 8 of 15                    Form 3003   1/01 (rev. 6/02)

Wolf00022

B-4508 P-240
Page: 10 of 19
001   4138770

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(AZ) (0305)                    Page 10 of 15                    Form 3003  1/01  (rev. 6/02)

0233 A26 1055

Wolf00023

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

6A(AZ) (0210)                                    Page 11 of 15                          Form 3003  3/01  (rev 8/02)



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



Page 12 of 16



Form 3003 1/01 (rev. 6/02)

Wolf00025

8-4508 P-240
Page. 13 of 19
4109770

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale..

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

Form 3003   1/01  (rev. 6/02)

Page 13 of 15

-6A(AZ) (0305)

B-4508 P-240
Page: 14 of 19

CONSISTENT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     Ronald Wolfson          (5/11/2007 Seal)
                            Ronald Wolfson               -Borrower

_____     _____ (Seal)
                                                         -Borrower

_____ (Seal)    _____ (Seal)
         -Borrower                                       -Borrower

_____ (Seal)    _____ (Seal)
         -Borrower                                       -Borrower

_____ (Seal)    _____ (Seal)
         -Borrower                                       -Borrower

-6A(AZ) (0206)              Page 14 of 15          Form 3003   1/01 (rev. 5/02)

Wolf00027

8-4508 P-240
Page  15 of 19
COT        4108770

STATE OF ARIZONA,                    Yavapai                 County ss:

The foregoing instrument was acknowledged before me this          May 11, 2007
by Ronald Wolfson, a single man

My Commission Expires: /1-4-08

NOTARY PUBLIC
STATE OF ARIZONA
Yavapai County
DEBRA J WATSON
My Commission Expires 11/04/08

Notary Public Yavapai Co.

Debra J. Watson

**SEAL**



Page 15 of 19



Form 3003   1/01 (rev. 6/02)

Wolf00028

B-4508 P-240
Page 16 of 19
OCT    A119770

MERS MIN: 100039032113116301

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        11th        day of
May, 2007                         , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
Quicken Loans Inc.

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
1716 Tatum Place
Prescott, AZ 86301

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in CC & R's as amended from
time to time

(the "Declaration").  The  Property  is  a  part  of  a  planned  unit  development,  known  as
Cliff Rose

[Name of Planned Unit Development]
(the "PUD").  The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations.  Borrower shall perform all of Borrower's obligations under the PUD's
Constituent  Documents.  The  "Constituent  Documents"  are  the  (i)  Declaration;  (ii)  articles  of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01
1462645698                                  Page 1 of 3                    Initials:
        -7R (0008)                    VMP MORTGAGE FORMS - (800)521-7291

Wolf00029

 

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-7R (0003)                                Page 2 of 3                                Form 3150 3/99

 

B-4508 P-240
Page  18 of 19
EOF        4100770

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Ronald Wolfson            -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

-7R (CCC3)                     Page 3 of 3                     Form 3150 3/89

Wolf00031



B-4508 P-248
Page 19 of 19
DOF   4138770

EXHIBIT A - LEGAL DESCRIPTION

Tax ID Number. 105-04-191

Land situated in the County of Yavapai in the State of AZ

Lot 394, of CLIFF ROSE UNIT 6, according to the plat of record in the Office of the
County of Recorder of Yavapai County, Arizona in Book 44 of Maps, Page 6.

Commonly known as: 1718 Tatum Place, Prescott, AZ  86301

Wolf00032

# EXHIBIT C

B: 4778 P  56 2010-4428747 AODT
eRecorded in Yavapai County, AZ Page 1 of 1
Ana Wayman Trujillo Recorder  11/19/2010 04 19:47 PM
LSI TITLE AGENCY INC  Fees. $13 00

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065

TS No. 10-0151076
TITLE ORDER#: 100704461AZGTI

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND
TRANSFERS TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS CWALT, INC.,ALTERNATIVE LOAN TRUST
2007-17CB MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-17CB .**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/11/2007,
EXECUTED BY:  RONALD WOLFSON, A SINGLE MAN,TRUSTOR: TO TITLE SOURCE, INC.,
TRUSTEE AND RECORDED AS INSTRUMENT NO. 4138770 ON 05/21/2007, IN BOOK 4508,
PAGE 240, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF YAVAPAI
COUNTY, IN THE STATE OF ARIZONA.

**LAND SITUATED IN THE COUNTY OF YAVAPAI IN THE STATE OF AZ LOT 394, OF
CLIFF ROSE UNIT 6, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE
COUNTY OF RECORDER OF YAVAPAI COUNTY, ARIZONA IN BOOK 44 OF MAPS,
PAGE 6.**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  11/18/10        MORTGAGE ELECTRONIC REGISTRATION
                        SYSTEMS, INC.

State of:  **Texas**         )   BY: _____  11/18/10
County of:  **Tarrant**      )        **Tiffany Wooten**          , Assistant Secretary

On  11/18/10        before me  Rosemarie S. Martinez     , personally
appeared  **Tiffany Wooten**    Assistant Secretary     , know to me (or proved to me on the
oath of _____ or through  TXDL     ) to be the person whose name is subscribed
to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ROSEMARIE S. MARTINEZ
Notary Public State of Texas
Commission Expires
FEBRUARY 21, 2012

*Form azasgn (01/02)*

# EXHIBIT D

2017-0033812 SUTR
eRecorded In Yavapai County, AZ  Page 1 of 1
Leslie M. Hoffman Recorder  07/03/2017 12:57:54 PM
SERVICELINK TITLE AGENCY INC.  Fees: $9.00

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions
Fidelity National Title

AND WHEN RECORDED MAIL TO:
Zieve, Brodnax & Steele, LLP
112 North Central Avenue, Suite 425
Phoenix, Arizona 85004

TS No.: 17-47459

## SUBSTITUTION OF TRUSTEE

WHEREAS, RONALD WOLFSON, A SINGLE MAN was the original Trustor; TITLE SOURCE, INC. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR QUICKEN LOANS INC, QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS was the original Beneficiary under that certain Deed of Trust dated 5/11/2007 and recorded on 5/21/2007, in book 4508 , page 240  of Official Records of Yavapai County, Arizona; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Joseph J. Tirello, Jr., a member of the State Bar of Arizona, 112 North Central Avenue, Suite 425, Phoenix, Arizona 85004 as Trustee under said Deed of Trust.  Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:  6.22.17

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CW ALT, INC., ALTERNATIVE LOAN TRUST 2007-17CB MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-17CB .By: Bayview Loan Servicing, LLC, its attorney in fact

Randall Jackson
Assistant Vice President

STATE OF ~~FLORIDA~~ PENNSYLVANIA
COUNTY OF Montgomery

The foregoing instrument was acknowledged before me   Lynda Buehler   this 22nd day of June, 2017, by
Randall Jackson .

(NOTARY SEAL)                                              (Signature of Notary Public-State of,  PENNSYLVANIA

Lynda Buehler             (Name of Notary Typed, Printed, or Stamped)

Personally Known  ✓  OR Produced Identification  N/A
Type of Identification Produced    N/A

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lynda Buehler, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires  Dec. 27, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

# EXHIBIT E

2017-0033813 NTS
eRecorded in Yavapai County, AZ  Page 1 of 2
Leslie M. Hoffman Recorder  07/03/2017 12:57:54 PM
SERVICELINK TITLE AGENCY INC   Fees: $9.00

Recording Requested by:

When Recorded Mail to:
Zieve, Brodnax & Steele, LLP
112 North Central Avenue, Suite 425
Phoenix, Arizona 85004

SPACE ABOVE THIS LINE FOR RECORDERS USE

TS#: 17-47459   Order #: 170217879-AZ-VOI

## NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust dated 5/11/2007 and recorded on 5/21/2007, in Book 4508, Page 240, in the office of the County Recorder of Yavapai County, Arizona, **NOTICE! IF YOU BELIEVE THERE IS A DEFENSE TO THE TRUSTEE SALE OR IF YOU HAVE AN OBJECTION TO THE TRUSTEE SALE, YOU MUST FILE AN ACTION AND OBTAIN A COURT ORDER PURSUANT TO RULE 65, ARIZONA RULES OF CIVIL PROCEDURE, STOPPING THE SALE NO LATER THAN 5:00 P.M. MOUNTAIN STANDARD TIME OF THE LAST BUSINESS DAY BEFORE THE SCHEDULED DATE OF THE SALE, OR YOU MAY HAVE WAIVED ANY DEFENSES OR OBJECTIONS TO THE SALE. UNLESS YOU OBTAIN AN ORDER, THE SALE WILL BE FINAL AND WILL OCCUR** at public auction to the highest bidder **on the steps facing Gurley Street at the Old Yavapai County Courthouse located at 120 S. Cortez Street, Prescott, AZ 86303, on 10/2/2017 at 11:00 AM** of said day:

**LOT 394, OF CLIFF ROSE UNIT 6, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY OF RECORDER OF YAVAPAI COUNTY, ARIZONA IN BOOK 44 OF MAPS, PAGE 6.**

Per A.R.S. Section 33-803 (A)(2) the successor trustee appointed here qualifies as a Trustee of the trust deed in the Trustee's capacity as a member of the State Bar of Arizona.

ACCORDING TO THE DEED OF TRUST OR UPON INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. SECTION 33-808(C):

Street address or identifiable location:      **1716 TATUM PLACE**
                                             **PRESCOTT, AZ 86301**

A.P.N.: **105-04-191 0**

Original Principal Balance: **$272,000.00**

Name and address of original trustor:
(as shown on the Deed of Trust)
**RONALD WOLFSON, A SINGLE MAN**
**1716 TATUM PLACE**
**PRESCOTT, AZ 86301**

1

2017-0033813 NTS
07/03/2017 12:57:54 PM Page 2 of 2

# NOTICE OF TRUSTEE'S SALE

Name and address of beneficiary:
(as of recording of Notice of Sale)
**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-17CB
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-17CB**
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146

NAME, ADDRESS & TELEPHONE NUMBER OF TRUSTEE:
(as of recording of Notice of Sale)

Joseph J. Tirello, Jr., a member of the State Bar of
Arizona
Zieve, Brodnax & Steele, LLP
112 North Central Avenue, Suite 425
Phoenix, Arizona 85004
Phone Number: (602) 688-7420

**SALE INFORMATION:**
Sales Line: (714) 730-2727 or
Website: www.servicelinkasap.com

Dated: 6-29-2017

Joseph J. Tirello, Jr., a member of the State Bar of Arizona

**Per A.R.S. Section 33-803 (A)(2) the successor trustee appointed here qualifies as a Trustee of the trust deed
in the Trustee's capacity as a member of the State Bar of Arizona.**

State of Arizona         )
                         ) ss.
County of Maricopa       )

On  6/29/2017 , before me, Courtney Perry, a Notary Public for the State of Arizona, personally
appeared Joseph J. Tirello, Jr., a member of the State Bar of Arizona, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument
the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

COURTNEY PERRY
Notary Public - Arizona
Maricopa County
My Comm Expires Nov 22, 2020

. 2

Wolf00196

# EXHIBIT F

Account History REDACTED Bayview:628 ]

| Borrower: | WOLFSON,RONALD | Address: | 1716 TATUM PL | Prin Bal: | $272,000.00 | | Investor Type: | Other |
|---|---|---|---|---|---|---|---|---|
| Co-Borrower Name: | | City: | PRESCOTT | Add Prin Bal: | $0.00 | | Investor #: | A00 |
| Due Date: | 06/01/2010 | State: | AZ | Account Type: | First Mortgage - Conventional Without PMI | | Investor Account #: | 2121304 |
| Last Pmt Appd On: | | Zip Code: | 86301 | Total Pmt Amt: | $1,397.98 | | PLS Client ID: | |

### Request Criteria: Type = All, Date Range = From 09/25/2009 To 09/25/2018

Row Count = 95

| Transaction Description | Applied Dt | Due Date | Payment | Principal Applied | Principal Balance | 1st Unpaid Prin Bal | 2nd Unpaid Prin Bal | Interest Applied | Escrow Applied | Esc Bal | Adv Bal | Suspense Applied | Suspense Bal | Corp Adv Applied | L/C Amt Applied | Other Applied | Fee Amt Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Property Pres Corp Adv | 09/11/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Attorney Corp Advance | 09/04/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $2,575.00 | | | |
| Property Pres Corp Adv | 08/10/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Attorney Corp Advance | 08/07/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $200.00 | | | |
| Property Pres Corp Adv | 07/23/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Attorney Corp Advance | 06/22/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $5,200.00 | | | |
| Property Pres Corp Adv | 06/12/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Attorney Corp Advance | 05/18/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $3,612.00 | | | |
| Attorney Corp Advance | 05/18/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $150.50 | | | |
| Property Pres Corp Adv | 05/11/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Attorney Corp Advance | 04/12/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $1,720.00 | | | |
| Property Pres Corp Adv | 04/10/2018 | | | | $272,000.00 | $272,000.00 | | | | | $17,054.42 | | | $11.00 | | | |
| Escrow Advance | 04/03/2018 | 06/01/2010 | $661.38 | | $272,000.00 | $272,000.00 | | | $661.38 | | $17,054.42 | | | | | | |
| County Tax Disbursement | 04/03/2018 | 04/01/2018 | -$661.38 | | $272,000.00 | $272,000.00 | | | -$661.38 | -$661.38 | $16,393.04 | | | | | | |
| Property Pres Corp Adv | 03/19/2018 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $11.00 | | | |
| Attorney Corp Advance | 03/02/2018 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $1,290.00 | | | |
| Property Pres Corp Adv | 02/22/2018 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $11.00 | | | |
| Property Pres Corp Adv | 01/18/2018 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $11.00 | | | |
| Property Pres Corp Adv | 12/14/2017 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $11.00 | | | |
| Attorney Corp Advance | 12/11/2017 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $537.50 | | | |
| Property Pres Corp Adv | 11/16/2017 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $11.00 | | | |
| Statutory Exp Corp Adv | 11/13/2017 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $660.08 | | | |
| Attorney Corp Advance | 11/13/2017 | | | | $272,000.00 | $272,000.00 | | | | | $16,393.04 | | | $202.50 | | | |
| Escrow Advance | 11/01/2017 | 06/01/2010 | $805.00 | | $272,000.00 | $272,000.00 | | | $805.00 | | $16,393.04 | | | | | | |
| Hazard Ins Disbursement | 11/01/2017 | 12/01/2017 | -$805.00 | | $272,000.00 | $272,000.00 | | | -$805.00 | -$805.00 | $15,588.04 | | | | | | |
| Property Pres Corp Adv | 10/19/2017 | | | | $272,000.00 | $272,000.00 | | | | | $15,588.04 | | | $11.00 | | | |
| Escrow Advance | 10/12/2017 | 06/01/2010 | $661.38 | | $272,000.00 | $272,000.00 | | | $661.38 | | $15,588.04 | | | | | | |
| County Tax Disbursement | 10/12/2017 | 10/01/2017 | -$661.38 | | $272,000.00 | $272,000.00 | | | -$661.38 | -$661.38 | $14,926.66 | | | | | | |
| Property Pres | | | | | | | | | | | | | | | | | |

| Description | Date | Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Corp Adv | 09/20/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Misc Default Exp Corp Adv | 09/13/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $77.00 |
| Misc Default Exp Corp Adv | 09/13/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $77.00 |
| Property Pres Corp Adv | 08/24/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Statutory Exp Corp Adv | 08/17/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $26.76 |
| Attorney Corp Advance | 08/17/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $945.00 |
| Statutory Exp Corp Adv | 08/09/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $18.00 |
| Property Pres Corp Adv | 07/28/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Statutory Exp Corp Adv | 07/07/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $570.00 |
| Property Pres Corp Adv | 06/15/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Misc Corp Adv Repay | 06/13/2017 | | $5.00 | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $5.00 |
| Property Pres Corp Adv | 05/19/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Misc Default Exp Corp Adv | 05/04/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $77.00 |
| Property Pres Corp Adv | 04/18/2017 | | | $272,000.00 | $272,000.00 | | | | $14,926.66 | | $11.00 |
| Escrow Advance | 03/31/2017 | 06/01/2010 | $658.55 | $272,000.00 | $272,000.00 | | $658.55 | | $14,926.66 | | |
| County Tax Disbursement | 03/31/2017 | 04/01/2017 | -$658.55 | $272,000.00 | $272,000.00 | | -$658.55 | -$658.55 | $14,268.11 | | |
| Property Pres Corp Adv | 03/20/2017 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $11.00 |
| Misc Default Exp Corp Adv | 02/27/2017 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $82.00 |
| Property Pres Corp Adv | 02/24/2017 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $11.00 |
| Property Pres Corp Adv | 01/24/2017 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $11.00 |
| Misc Default Exp Corp Adv | 01/10/2017 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $75.00 |
| Property Pres Corp Adv | 12/19/2016 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $11.00 |
| Property Pres Corp Adv | 11/15/2016 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $11.00 |
| Misc Default Exp Corp Adv | 11/09/2016 | | | $272,000.00 | $272,000.00 | | | | $14,268.11 | | $75.00 |
| Escrow Advance | 11/01/2016 | 06/01/2010 | $784.00 | $272,000.00 | $272,000.00 | | $784.00 | | $14,268.11 | | |
| Hazard Ins Disbursement | 11/01/2016 | 12/01/2016 | -$784.00 | $272,000.00 | $272,000.00 | | -$784.00 | -$784.00 | $13,484.11 | | |
| Property Pres Corp Adv | 10/24/2016 | | | $272,000.00 | $272,000.00 | | | | $13,484.11 | | $11.00 |
| Escrow Advance | 10/05/2016 | 06/01/2010 | $658.55 | $272,000.00 | $272,000.00 | | $658.55 | | $13,484.11 | | |
| County Tax Disbursement | 10/05/2016 | 10/01/2016 | -$658.55 | $272,000.00 | $272,000.00 | | -$658.55 | -$658.55 | $12,825.56 | | |
| Property Pres Corp Adv | 09/21/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $11.00 |
| Misc Default Exp Corp Adv | 09/16/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $75.00 |
| Property Pres Corp Adv | 08/19/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $11.00 |
| Property Pres Corp Adv | 07/27/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $11.00 |
| Misc Default Exp Corp Adv | 07/15/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $75.00 |
| Property Pres Corp Adv | 06/20/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $11.00 |
| Property Pres Corp Adv | 05/23/2016 | | | $272,000.00 | $272,000.00 | | | | $12,825.56 | | $11.00 |
| Escrow Advance | 04/06/2016 | 06/01/2010 | $638.69 | $272,000.00 | $272,000.00 | | $638.69 | | $12,825.56 | | |
| County Tax Disbursement | 04/06/2016 | 04/01/2016 | -$638.69 | $272,000.00 | $272,000.00 | | -$638.69 | -$638.69 | $12,186.87 | | |

| Type | Date | Date | Amount | | | | | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Escrow Advance | 11/02/2015 | 06/01/2010 | $865.00 | | $272,000.00 | $272,000.00 | | $865.00 | | $12,186.87 | | | |
| Hazard Ins Disbursement | 11/02/2015 | 12/01/2015 | -$865.00 | | $272,000.00 | $272,000.00 | | -$865.00 | -$865.00 | $11,321.87 | | | |
| Misc Corp Adv Repay | 10/27/2015 | | $0.75 | | $272,000.00 | $272,000.00 | | | | $11,321.87 | | | $0.75 |
| Escrow Advance | 10/07/2015 | 06/01/2010 | $638.69 | | $272,000.00 | $272,000.00 | | $638.69 | | $11,321.87 | | | |
| County Tax Disbursement | 10/07/2015 | 10/01/2015 | -$638.69 | | $272,000.00 | $272,000.00 | | -$638.69 | -$638.69 | $10,683.18 | | | |
| Misc Corporate Adv Disb | 09/28/2015 | | | | $272,000.00 | $272,000.00 | | | | $10,683.18 | | | $0.75 |
| Misc Corporate Adv Disb | 08/19/2015 | | | | $272,000.00 | $272,000.00 | | | | $10,683.18 | | | $0.75 |
| Escrow Advance | 04/06/2015 | 06/01/2010 | $636.87 | | $272,000.00 | $272,000.00 | | $636.87 | | $10,683.18 | | | |
| County Tax Disbursement | 04/06/2015 | 04/01/2015 | -$636.87 | | $272,000.00 | $272,000.00 | | -$636.87 | -$636.87 | $10,046.31 | | | |
| Escrow Advance | 10/31/2014 | 06/01/2010 | $877.00 | | $272,000.00 | $272,000.00 | | $877.00 | | $10,046.31 | | | |
| Hazard Ins Disbursement | 10/31/2014 | 12/01/2014 | -$877.00 | | $272,000.00 | $272,000.00 | | -$877.00 | -$877.00 | $9,169.31 | | | |
| Escrow Advance | 10/08/2014 | 06/01/2010 | $636.87 | | $272,000.00 | $272,000.00 | | $636.87 | | $9,169.31 | | | |
| County Tax Disbursement | 10/08/2014 | 10/01/2014 | -$636.87 | | $272,000.00 | $272,000.00 | | -$636.87 | -$636.87 | $8,532.44 | | | |
| Misc Default Exp Corp Adv | 10/02/2014 | | | | $272,000.00 | $272,000.00 | | | | $8,532.44 | | | $75.00 |
| Escrow Advance | 04/08/2014 | 06/01/2010 | $606.17 | | $272,000.00 | $272,000.00 | | $606.17 | | $8,532.44 | | | |
| County Tax Disbursement | 04/08/2014 | 04/01/2014 | -$606.17 | | $272,000.00 | $272,000.00 | | -$606.17 | -$606.17 | $7,926.27 | | | |
| Property Pres Corp Adv | 03/21/2014 | | | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $11.00 |
| Property Pres Corp Adv | 02/21/2014 | | | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $11.00 |
| Restricted Corp Adv Adj | 02/07/2014 | | -$200.00 | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | -$200.00 |
| Restricted Corp Adv Adj | 02/07/2014 | | $200.00 | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $200.00 |
| Property Pres Corp Adv | 01/23/2014 | | | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $11.00 |
| Property Pres Corp Adv | 12/27/2013 | | | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $11.00 |
| Property Pres Corp Adv | 11/27/2013 | | | | $272,000.00 | $272,000.00 | | | | $7,926.27 | | | $11.00 |
| Escrow Advance | 10/31/2013 | 06/01/2010 | $851.00 | | $272,000.00 | $272,000.00 | | $851.00 | | $7,926.27 | | | |
| Hazard Ins Disbursement | 10/31/2013 | 12/01/2013 | -$851.00 | | $272,000.00 | $272,000.00 | | -$851.00 | -$851.00 | $7,075.27 | | | |
| Property Pres Corp Adv | 10/23/2013 | | | | $272,000.00 | $272,000.00 | | | | $7,075.27 | | | $11.00 |
| Escrow Advance | 10/08/2013 | 06/01/2010 | $606.17 | | $272,000.00 | $272,000.00 | | $606.17 | | $7,075.27 | | | |
| County Tax Disbursement | 10/08/2013 | 10/01/2013 | -$606.17 | | $272,000.00 | $272,000.00 | | -$606.17 | -$606.17 | $6,469.10 | | | |
| Property Pres Corp Adv | 09/23/2013 | | | | $272,000.00 | $272,000.00 | | | | $6,469.10 | | | $11.00 |

Generated: 09/25/2018 2:26:34 PM

Account History Search

# Transaction History

**Account Information**

REDACTED

Loan Inquiry

Portfolio Info

Account Information

Loss Mitigation

Special Handling

Administration

File Transfers

Log Out



**Loan Number**

| Borrower(s) | Property Address | Mailing Address | Phone Numbers |
|---|---|---|---|
| RONALD WOLFSON | 1716 TATUM PLACE PRESCOTT, AZ 86301 | 1716 Tatum Pl Prescott, AZ 86301 | H:(928) 848-8148 W:- |

| Loan Status | Special Handling | Loan Action |
|---|---|---|
| Servicing Sold or Transferred | | Foreclosure |

View the account history below or enter the range of dates you wish to search from:

From --Month--  ▼ , / --Year-- ▼ ' To --Month-- ▼ | --Year-- ▼  [Submit]

From: 01/01/2007 To: 12/31/2012

Page 1 of 4

| Trans Type | Trans Date / Due Date | Payment Amt / Life/Disability Ins. | Principal / Balance | Interest / Buydown | Escrow / Balance | Late Charge / Balance | Partial / Balance |
|---|---|---|---|---|---|---|---|
| Payment | 08/21/2007 07/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Misc posting | 08/21/2007 07/01/2007 | $1,246.67 $0.00 | $1,246.67 $270,753.33 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Misc posting | 06/27/2007 07/01/2007 | ($1,246.67) $0.00 | ($1,246.67) $272,000.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment reversal | 08/27/2007 06/01/2007 | ($1,246.67) $0.00 | $0.00 $272,000.00 | ($1,246.67) $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 06/27/2007 07/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 08/27/2007 08/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment reversal | 06/28/2007 07/01/2007 | ($1,246.67) $0.00 | $0.00 $272,000.00 | ($1,246.67) $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment reversal | 06/29/2007 08/01/2007 | ($1,246.67) $0.00 | $0.00 $272,000.00 | ($1,246.67) $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment posting | 06/29/2007 07/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment posting | 06/29/2007 08/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 08/21/2007 09/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 09/21/2007 10/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 11/02/2007 11/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 12/12/2007 12/01/2007 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 01/17/2008 01/01/2008 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 ($62.33) | $0.00 $0.00 |

Next  Last

, whu.

Account History Search

Page 1 of 1

**Account Information**

# Transaction History

<span style="color:red">REDACTED</span>

Loan Inquiry

Portfolio Info

Account Information

Loss Mitigation

Special Handling

Administration

File Transfers

Log Out



## Loan Number

| Borrower(s) | Property Address | Mailing Address | Phone Numbers |
|---|---|---|---|
| RONALD WOLFSON | 1716 TATUM PLACE PRESCOTT, AZ 86301 | 1716 Tatum Pl Prescott, AZ 86301 | H:(928) 848-8148 W: |

| Loan Status | Special Handling | Loan Action |
|---|---|---|
| Servicing Sold or Transferred | | Foreclosure |

View the account history below or enter the range of dates you wish to search from:

From --Month-- ▼ / --Year-- ▼ : To --Month-- ▼ / --Year-- ▼  Submit

From: 01/01/2007 To: 12/31/2012                                      Page 2 of 4

| Trans Type | Trans Date / Due Date | Payment Amt / Life/Disability Ins. | Principal / Balance | Interest / Buydown Balance | Escrow / Balance | Late Charge / Balance | Partial / Balance |
|---|---|---|---|---|---|---|---|
| Payment | 02/14/2008 02/01/2008 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 ($62.33) | $0.00 $0.00 |
| Payment | 03/14/2008 03/01/2008 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 $0.00 | $0.00 ($62.33) | $0.00 $0.00 |
| County tax payment | 04/01/2008 03/01/2008 | ($407.65) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($407.65) ($407.65) | $0.00 ($62.33) | $0.00 $0.00 |
| Payment | 04/14/2008 04/01/2008 | $1,245.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 ($407.65) | $0.00 ($62.33) | $0.00 $0.00 |
| Payment | 05/13/2008 05/01/2008 | $1,246.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $0.00 ($407.65) | $0.00 ($62.33) | $0.00 $0.00 |
| Payment | 06/23/2008 06/01/2008 | $1,321.45 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $74.78 ($332.87) | $0.00 ($124.66) | $0.00 $0.00 |
| Payment | 07/11/2008 07/01/2008 | $1,321.46 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $74.79 ($258.08) | $0.00 ($124.66) | $0.00 $0.00 |
| Payment | 08/15/2008 08/01/2008 | $1,321.46 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $67.78 ($190.32) | $0.00 ($124.66) | $7.03 $7.03 |
| Payment | 09/11/2008 09/01/2008 | $1,314.43 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $64.84 ($125.48) | $0.00 ($124.66) | $2.92 $9.95 |
| Misc posting | 09/26/2008 09/01/2008 | $0.00 $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | $0.00 ($125.48) | $9.95 ($114.71) | ($9.95) $0.00 |
| Waive/Adj Late Chrg | 10/07/2008 09/01/2008 | $82.33 $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | $0.00 ($125.48) | $82.33 ($52.38) | $0.00 $0.00 |
| County tax pmt | 10/27/2008 09/01/2008 | ($539.43) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($539.43) ($764.91) | $0.00 ($52.38) | $0.00 $0.00 |
| Payment | 10/28/2008 10/01/2008 | $1,308.83 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $62.16 ($702.75) | $0.00 ($114.71) | $0.00 $0.00 |
| Misc posting | 10/29/2008 10/01/2008 | $2.68 $0.00 | $0.00 $272,000.00 | · $0.00 $0.00 | $2.68 ($700.07) | $0.00 ($114.71) | $0.00 $0.00 |
| Payment | 12/01/2008 11/01/2008 | $1,308.83 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $62.16 ($637.91) | $0.00 ($177.04) | $0.00 $0.00 |

First  Previous                                               Next  Last

Account History Search

Account Information

# Transaction History

<span style="color:red">REDACTED</span>

Loan Inquiry

Portfolio Info

Account Information

Loss Mitigation

Special Handling

Administration

File Transfers

Log Out

| Loan Number | | | |
|---|---|---|---|
| Borrower(s) | Property Address | Mailing Address | Phone Numbers |
| RONALD WOLFSON | 1716 TATUM PLACE PRESCOTT, AZ 86301 | 1716 Tatum Pl Prescott, AZ 86301 | H:(928) 848-8148 W:- |
| Loan Status | | Special Handling | Loan Action |
| Servicing Sold or Transferred | | | Foreclosure |

View the account history below or enter the range of dates you wish to search from:

From --Month-- ▼ / --Year-- ▼  To --Month-- ▼ / --Year-- ▼   Submit

From: 01/01/2007 To: 12/31/2012 — Page 3 of 4

| Trans Type | Trans Date / Due Date | Payment Amt / Life/Disability Ins. | Principal / Balance | Interest / Buydown Balance | Escrow / Balance | Late Charge / Balance | Partial / Balance |
|---|---|---|---|---|---|---|---|
| Payment | 01/12/2009 12/01/2008 | $1,371.16 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $62.16 ($575.75) | $62.33 ($177.04) | $0.00 $0.00 |
| Payment | 01/28/2009 01/01/2009 | $1,613.71 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $190.00 ($385.75) | $177.04 $0.00 | $0.00 $0.00 |
| Payment | 03/13/2009 02/01/2009 | $1,436.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $190.00 ($195.75) | $0.00 ($62.33) | $0.00 $0.00 |
| Payment | 03/13/2009 03/01/2009 | $1,499.00 $0.00 | $0.00 $272,000.00 | $1,245.67 $0.00 | $190.00 ($5.75) | $62.33 $0.00 | $0.00 $0.00 |
| County tax pmt | 04/24/2009 03/01/2009 | ($639.43) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($639.43) ($645.18) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 05/13/2009 04/01/2009 | $1,499.00 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $190.00 ($455.18) | $62.33 $0.00 | $0.00 $0.00 |
| Payment | 05/13/2009 05/01/2009 | $1,436.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $190.00 ($265.18) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 06/10/2009 06/01/2009 | $1,436.67 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $190.00 ($75.18) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 09/24/2009 07/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $147.89 $72.51 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 07/22/2009 08/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $148.29 $220.80 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 08/26/2009 09/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $148.29 $369.09 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 10/02/2009 10/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $148.29 $517.38 | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 10/27/2009 10/01/2009 | ($714.16) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($714.16) ($196.78) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 10/28/2009 11/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $148.29 ($48.49) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 11/30/2009 12/01/2009 | $1,394.96 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $148.29 $99.80 | $0.00 $0.00 | $0.00 $0.00 |

First   Previous                                        Next   Last

Account History Search

**Account Information**

# Transaction History

Loan Inquiry

Portfolio Info

Account Information

Loss Mitigation

Special Handling

Administration

File Transfers

Log Out



| Loan Number | | | | REDACTED | |
|---|---|---|---|---|---|
| Borrower(s) | Property Address | Mailing Address | Phone Numbers | | |
| RONALD WOLFSON | 1716 TATUM PLACE PRESCOTT, AZ 86301 | 1716 Tatum Pl Prescott, AZ 86301 | H:(928) 848-8148 W:- | | |
| Loan Status | Special Handling | Loan Action | | | |
| Servicing Sold or Transferred | · | Foreclosure | | | |

View the account history below or enter the range of dates you wish to search from:

From --Month-- ▼ ;/ --Year-- ▼ To --Month-- ▼ ;/ --Year-- ▼  [ Submit ]

From: 01/01/2007 To: 12/31/2012                                     Page 4 of 4

| Trans Type | Trans Date / Due Date | Payment Amt / Life/Disability Ins. | Principal / Balance | Interest / Buydown | Escrow / Balance | Late Charge / Balance | Partial / Balance |
|---|---|---|---|---|---|---|---|
| Payment | 01/05/2010 01/01/2010 | $1,396.98 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $150.31 $250.11 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 02/11/2010 02/01/2010 | $1,396.98 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $150.31 $400.42 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 03/15/2010 03/01/2010 | $1,396.98 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $150.31 $550.73 | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 04/09/2010 04/01/2010 | $1,396.98 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $150.31 $701.04 | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 04/21/2010 04/01/2010 | ($714.16) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($714.16) ($13.12) | $0.00 $0.00 | $0.00 $0.00 |
| Payment | 05/06/2010 05/01/2010 | $1,396.98 $0.00 | $0.00 $272,000.00 | $1,246.67 $0.00 | $150.31 $137.19 | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 10/15/2010 05/01/2010 | ($692.83) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($692.83) ($555.44) | $0.00 $0.00 | $0.00 $0.00 |
| Homeowners ins pmt | 11/03/2010 05/01/2010 | ($971.90) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($971.90) ($1,527.34) | $0.00 $0.00 | $0.00 $0.00 |
| Homeowners ins pmt | 03/24/2011 05/01/2010 | ($457.47) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($457.47) ($1,984.81) | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 04/20/2011 05/01/2010 | ($692.83) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($692.83) ($2,677.44) | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 10/25/2011 05/01/2010 | ($579.17) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($579.17) ($3,256.61) | $0.00 $0.00 | $0.00 $0.00 |
| Homeowners ins pmt | 11/17/2011 05/01/2010 | ($681.00) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($681.00) ($3,937.61) | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 04/04/2012 05/01/2010 | ($579.17) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($579.17) ($4,516.78) | $0.00 $0.00 | $0.00 $0.00 |
| County tax pmt | 10/15/2012 05/01/2010 | ($594.16) $0.00 | $0.00 $272,000.00 | $0.00 $0.00 | ($594.16) ($5,110.94) | $0.00 $0.00 | $0.00 $0.00 |

First   Previous

# EXHIBIT 2

1  Kim R. Lepore, Esq. (AZ Bar #019130)
   ecook@zbslaw.com
2  Joseph J. Tirello, Esq. (AZ Bar #033371)
   jtirello@zbslaw.com
3  ZIEVE, BRODNAX & STEELE, LLP
   3550 N. Central Ave., Suite 625
4  Phoenix, Arizona 85012
   Phone: (602) 282-6188
5  Attorneys for Defendants Bayview Loan Servicing, LLC and The Bank Of New York
6  Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The
   CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates,
7  Series 2007-17CB

8              **UNITED STATES DISTRICT COURT**

9                   **DISTRICT OF ARIZONA**

10

11  Ronald Wolfson,                    Case No. CV-17-8258-PCT-DWL

12             Plaintiff,

13     vs.                             **AFFIDAVIT OF KIM R. LEPORE,**
                                       **ESQ., IN SUPPORT OF MOTION FOR**
14  Bayview Loan Servicing, LLC and The **SUMMARY JUDGMENT**
    Bank Of New York Mellon fka The Bank
15  Of New York, As Trustee For The
    Certificateholders Of The CWALT, Inc.,
16  Alternative Loan Trust 2007-17CB
    Mortgage Pass-Through Certificates,
17  Series 2007-17CB,

18             Defendants.

19

20     I, Kim R. Lepore, being duly sworn upon oath, depose and state as follows:

21     1.     I am an attorney with the law firm of ZEIVE, BRODNAX & STEELE, LLP,

22  counsel for Defendants Bayview Loan Servicing, LLC and The Bank Of New York Mellon

23  fka The Bank Of New York, As Trustee For The Certificateholders Of The CWALT, Inc.,

24  Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates, Series 2007-17CB

25  ("Defendants").

26     2.     As an attorney at the firm, I have access to and am familiar with the firm's

27  case management system utilized by the litigation attorneys, including my predecessor at the

28  firm, Eric Cook. Eric Cook was the counsel of record for Defendants prior to Defendants

    substituting me in his place and stead.

                                                        File No. 17003357

3.      I have reviewed the records maintained by Mr. Cook and the firm related to this lawsuit. I have personal knowledge of the facts contained within this affidavit based upon my review of the records kept and maintained in the firm's case management system. If called as a witness, I could and would competently testify thereto.

4.      On January 19, 2018, Dayna Amsler, an employee of Zieve, Brodnax & Steele, LLP, mailed Defendants' First Set of Requests for Admissions and Non-Uniform Interrogatory to Plaintiff's counsel. A true and correct copy of the relevant pages[1] of the Request is attached hereto as Exhibit A.

5.      On January 23, 2018, Defendant filed and served on Plaintiff a Notice of Service of Discovery Requests. A true and correct copy of the Notice is attached hereto as Exhibit B.

6.      Plaintiff's written responses were due by February 26, 2018 at the latest after adding five days for mailing and weekends and holidays. Defendants did not receive Plaintiff's written responses by due date.

7.      On March 27, 2018 – one month after the responses were due – Plaintiff's counsel sent an email to Mr. Cook stating that she discovered on that date that she was late in responding to Defendants' written discovery propounded on January 19, 2018, and asking if Mr. Cook would agree to the "belated request for an extension." A true and correct copy of that email is attached hereto as Exhibit C.

8.      On the same day, March 27, 2018, Mr. Cook send a responsive email to Plaintiff's counsel stating that he cannot agree to her request for an extension one month after the discovery responses were due. Mr. Cook also noted that "the requests for admissions are deemed admitted." A true and correct copy of that email is attached hereto as Exhibit D.

I declare the foregoing under the penalty of perjury under the laws of Arizona.

**DATED** this 25th day of January, 2019.

Kim R. Lepore, Esq.

---

[1] *See*, Doc. 52 at 2 ("The evidence may include only relevant excerpts rather than full documents.").

File No. 17003357

# EXHIBIT A

1   Eric L. Cook, Esq. (AZ Bar #020797)
    ecook@zbslaw.com
2   Joseph J. Tirello, Esq. (AZ Bar #033371)
    jtirello@zbslaw.com
3   **ZIEVE, BRODNAX & STEELE, LLP**
    3550 North Central Avenue, Suite 625
4   Phoenix, AZ 85004
    Phone: (602) 282-6188
5   Attorneys for Defendants Bayview Loan Servicing, LLC and The Bank Of New York
    Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The
6   CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates,
    Series 2007-17CB
7

8                         **UNITED STATES DISTRICT COURT**

9                            **DISTRICT OF ARIZONA**

10                                              |  Case No. 3:17-cv-08258-DMF
     RONALD WOLFSON,                            |
11                                              |
                    Plaintiff,                  |  **DEFENDANTS' FIRST SET OF**
12                                              |  **REQUESTS FOR ADMISSIONS AND**
                    vs.                         |  **NON-UNIFORM INTERROGATORY**
13                                              |
     BAYVIEW LOAN SERVICING, LLC;               |
14   THE BANK OF NEW YORK MELLON                |
     FKA THE BANK OF NEW YORK, AS               |
15   TRUSTEE FOR THE                            |
     CERTIFICATEHOLDERS OF THE                  |
16   CWALT, INC., ALTERNATIVE LOAN              |
     TRUST 2007-17B MORTGAGE PASS-              |
17   THROUGH CERTIFICATES, SERIES               |
     2007-17B,                                  |
18                                              |
                    Defendants.                 |
19

20          Defendants Bayview Loan Servicing, LLC and The Bank Of New York Mellon fka

21   The Bank Of New York, As Trustee For The Certificateholders Of The CWALT, Inc.,

22   Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates, Series 2007-17CB,

23   (collectively the "Defendants"), by and through undersigned counsel, requests that Plaintiff

24   Ronald Wolfson, ("Plaintiff"), answer the Request for Admissions and Non-Uniform

25   Interrogatories within thirty (30) days of service. Each Request and Interrogatory shall be

26   answered separately and fully, unless it is objected to, in which event, the reasons for each

27   objection shall be stated in lieu of a response. The answers or objections are to be signed by

28

                                          -1-
     _____
     **FIRST SET OF REQUESTS FOR ADMISSIONS**                    **File #17003357**

1  DOCUMENTS or things responsive to these Request for Admissions, YOU are required to

2  immediately provide such additional information, produce such additional DOCUMENTS

3  and things and supplement these discovery responses as necessary and appropriate.

4       **B.**    **Instructions pertaining to these Requests for Admission**

5          1.    Within the time period prescribed, YOU are required to respond to the

6  following Requests for Admissions, specifically admitting or denying each of them in writing

7  and under oath by answering "admit" or "deny" or set forth in detail the reasons why YOU

8  cannot admit or deny the matter.

9          2.    If YOU are able to admit or deny a Request for Admission only in part,

10  you shall explain the reasons therefore and qualify or deny the remainder.

11          3.    If you lack sufficient knowledge to affirmatively admit or deny a

12  Request for Admission, so state and explain the specific efforts undertaken by YOU to verify

13  or obtain the information which would allow YOU to respond.  Lack of information or

14  knowledge may not be given as a reason for failure to admit or deny unless YOU state that

15  YOU have made a reasonable inquiry and that the information known or under YOUR

16  control is insufficient for YOU to admit or deny the Request for Admission.

17          4.    If an objection is made to a Request for Admission, the reasons must be

18  stated.  A Request for Admission is not objectionable for the sole reason that the matter of

19  which an admission has been requested presents a genuine issue for trial.

20          5.    If you fail to respond as required, the Request for Admissions will be

21  deemed admitted under Rule 36 of the Federal Rules of Civil Procedure.

22                       **REQUEST FOR ADMISSIONS**

23      1.    Admit that Quicken Loans Inc. made a loan to YOU in the amount of

24  $272,000.00 as evidenced by the Interest-Only Period Fixed Rate Note dated May 11, 2007

25  (the "Promissory Note"), attached as Exhibit A to YOUR Complaint.

26      2.    Admit that YOU signed the Promissory Note attached as Exhibit A to YOUR

27  Complaint.

28

3.  Admit that you signed a Deed of Trust dated May 11, 2007, recorded on May 21, 2007 with the Yavapai County Recorder as instrument number 4138770, book 4508, page 240 (the "Deed of Trust").

4.  Admit that YOU signed the Deed of Trust, a copy of which is attached hereto as Exhibit 1.

5.  Admit that section 22 of the Deed of Trust, a copy of which is attached hereto as Exhibit 1, contains the Lender's and its successor's remedies in the event of a default by the borrower.

6.  Admit that section 22 of the Deed of Trust, a copy of which is attached hereto as Exhibit 1, provides the Lender and its successors with the option to invoke the power of sale.

7.  Admit that the Deed of Trust YOU signed and attached hereto as Exhibit 1 contains a provision that states, at page 2 of the Deed of Trust, subsection E, that, "MERS is a separate corporation acting solely as a nomine for Lender and the Lender's successors and assigns."

8.  Admit that the Deed of Trust YOU signed and attached hereto as Exhibit 1, contains a provision that states, at page 2 of the Deed of Trust, subsection E, that, "MERS is the beneficiary under this Security Instrument."

9.  Admit that YOU agreed that, "MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to releasing and canceling this Security instrument" as evidenced by subsection R, the Transfer of Rights in the Property, at page 3 to the Deed of Trust, attached hereto as Exhibit 1.

10. Admit that YOU agreed that, "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to

-5-

1   the Borrower" as set forth in section 20 of the Deed of Trust attached hereto as Exhibit 1.

2       11.    Admit that YOU agreed that the, "Lender may, for any reason or cause, from

3   time to time remove the Trustee and appoint a successor trustee to any Trustee appointed

4   hereunder" as set forth in section 24 of the Deed of Trust attached hereto as Exhibit 1.

5       12.    Admit that YOU agreed that, "[w]ithout conveyance of the Property, the

6   successor trustee shall succeed to all the title, power or duties conferred upon Trustee herein

7   and by Applicable Law" as set forth in section 24 of the Deed of Trust attached hereto as

8   Exhibit 1.

9       13.    Admit that YOU breached the Promissory Note and Deed of Trust by failing to

10   pay YOUR monthly mortgage payment.

11       14.    Admit that Quicken Loans Inc., as the lender, and its successors in interest have

12   the ability to invoke the power of sale as defined in section 22, Acceleration; Remedies as set

13   forth on page 13 of the Deed of Trust, attached hereto as Exhibit 1.

14       15.    Admit that MERS is an agent of Quicken Loans Inc.

15       16.    Admit that MERS had the authority to execute an Assignment of the Deed of

16   Trust pursuant to subsection R, at page 3 of the Deed of Trust, attached hereto as Exhibit 1.

17       17.    Admit that Bank of America, NA caused to be recorded a Cancellation of

18   Notice of Trustee dated March 3, 2011, recorded as instrument number 2011-0012365 on

19   March 4, 2011, (the "Cancellation"), attached hereto as Exhibit 2.

20       18.    Admit that Quicken Loans Inc., as the lender, and its successors in interest,

21   have the ability to substitute the trustee under section 24 of the Deed of Trust attached hereto

22   as Exhibit 1.

23       19.    Admit that a true and correct copy of the Cancellation is attached hereto as

24   Exhibit 2.

25       20.    Admit that Defendants did not breach the implied covenant of good faith and

26   fair dealings by foreclosing under the Promissory Note and Deed of Trust

27       21.    Admit that BNYM is the current beneficiary under the Deed of Trust.

28

FIRST SET OF REQUESTS FOR ADMISSIONS            File #17003357

22.     Admit that the First and Second Assignments, as described in the Complaint, are valid.

23.     Admit that the Second Substitution of Trustee, as described in the Complaint, and identified by recording number 2017-0033812 is valid.

24.     Admit that the Second Notice of Trustee's Sale, as described in the Complaint, and identified by recording number 2017-0033813 is valid.

25.     Admit that YOU never sought out any loss mitigation options from either Defendants BNYM or Bayview in 2017.

26.     Admit that your are not asserting a claim for severe emotional distress or physical ailments as alleged in paragraph 100 to the Complaint.

27.     Admit that YOU are not entitled to punitive damages as alleged in the prayer for relief to YOUR Complaint.

28.     Admit that the Principal of $272,00.00, plus interest, late charges and other fees and costs as set forth in Section 1 to the Promissory Note, attached as Exhibit A to the Complaint, was not discharged by Plaintiff's 2008 Chapter 13 filing with the U.S. Bankruptcy Court.

29.     Admit that YOU are in default for failing to pay YOUR monthly mortgage payment under section 3, Payments to the Promissory Note attached as Exhibit A to the Complaint and section 22 to the Deed of Trust attached as Exhibit 1.

## NON-UNIFORM INTERROGATORY

1.     In the event that YOU deny any of the above Requests for Admissions, please set forth the facts and identify by date, name and/or subject any document on which YOU base such denial.

1    **DATED** this ___ day of January 2018.

2

3                                ZIEVE, BRODNAX & STEELE, LLP

4

5

6                                _____

                                 ERIC L. COOK
7                                *Attorney for Defendants Bayview Loan Servicing, LLC*
                                 *and The Bank Of New York Mellon fka The Bank Of*
8                                *New York, As Trustee For The Certificateholders Of*
                                 *The CWALT, Inc., Alternative Loan Trust 2007-17CB*
9                                *Mortgage Pass-Through Certificates, Series 2007-*
                                 *17CB*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        -8-
     **FIRST SET OF REQUESTS FOR ADMISSIONS**                        File #17003357

1

## CERTIFICATE OF SERVICE

2

3    ORIGINAL of the foregoing was MAILED
     to the following on this �My day of January 2018 to:

4    Beth Findsen, Esq,
     The Law Offices of Beth K. Findsen, PLLC
5    7279 East Adobe Drive, suite D-120
     Scottsdale, AZ 85255

6

7    _____

8    Dayna Amsler
     An employee of ZIEVE, BRODNAX & STEELE, LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

**FIRST SET OF REQUESTS FOR ADMISSIONS**                    File #17003357

# EXHIBIT B

1   Eric L. Cook, Esq. (AZ Bar #020797)
    ecook@zbslaw.com
2   Joseph J. Tirello, Esq. (AZ Bar #033371)
    jtirello@zbslaw.com
3   **ZIEVE, BRODNAX & STEELE, LLP**
    3550 North Central Avenue, Suite 625
4   Phoenix, AZ 85004
    Phone: (602) 282-6188
5   Attorneys for Defendants Bayview Loan Servicing, LLC and The Bank Of New York
    Mellon fka The Bank Of New York, As Trustee For The Certificateholders Of The
6   CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-Through Certificates,
    Series 2007-17CB

7

## UNITED STATES DISTRICT COURT

8

## DISTRICT OF ARIZONA

9

| | |
|---|---|
| 10   RONALD WOLFSON, | Case No. 3:17-cv-08258-DMF |
| 11       Plaintiff, | **NOTICE OF SERVICE OF DISCOVERY REQUESTS** |
| 12       vs. | |
| 13   BAYVIEW LOAN SERVICING, LLC; | |
| 14   THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS | |
| 15   TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE | |
| 16   CWALT, INC., ALTERNATIVE LOAN TRUST 2007-17B MORTGAGE PASS- | |
| 17   THROUGH CERTIFICATES, SERIES 2007-17B, | |
| 18       Defendants. | |
| 19 | |

20      **NOTICE IS HEREBY GIVEN** that Defendants Bayview Loan Servicing, LLC and

21   The Bank Of New York Mellon fka The Bank Of New York, As Trustee For The

22   Certificateholders Of The CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-

23   Through Certificates, Series 2007-17CB, (collectively the "Defendants"), through

24   undersigned counsel, served upon Plaintiff Ronald Wolfson, ("Plaintiff"), First Set of

25   Request for Admissions, First set of Request for Production of Documents and Non-Uniform

26   Interrogatories on January 19, 2018, via U.S. Mail and email upon counsel for Plaintiff as

27   follows:

28

1 | Beth Findsen, Esq,
The Law Offices of Beth K. Findsen, PLLC
2 | 7279 East Adobe Drive, suite D-120
Scottsdale, AZ 85255
3 | Counsel for Plaintiff

4

**DATED** this 19th day of January 2018.
5

6

7

**ZIEVE, BRODNAX & STEELE, LLP**
8

9

10
*/s/Eric L. Cook*
11 | ERIC L. COOK
*Attorney for Defendants Bayview Loan Servicing, LLC*
12 | *and The Bank Of New York Mellon fka The Bank Of*
*New York, As Trustee For The Certificateholders Of*
13 | *The CWALT, Inc., Alternative Loan Trust 2007-17CB*
*Mortgage Pass-Through Certificates, Series 2007-*
14 | *17CB*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**NOTICE OF SERVICE OF DISCOVERY REQUESTS**                              **File #17003357**

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated above, a copy of the foregoing has been transmitted electronically to the CM-ECF filing system for filing and transmittal along with copies transmitted to the following parties via the CM-ECF system.

**COPY** mailed this same day to:

Beth Findsen, Esq,
The Law Offices of Beth K. Findsen, PLLC
7279 East Adobe Drive, suite D-120
Scottsdale, AZ 85255
Counsel for Plaintiff

*/s/ Dayna Amsler*
Dayna Amsler
An employee of ZIEVE, BRODNAX & STEELE, LLP

NOTICE OF SERVICE OF DISCOVERY REQUESTS                    **File #17003357**

# EXHIBIT C

**Kim Lepore**

| | |
|---|---|
| **From:** | Beth Findsen <findsenb@gmail.com> |
| **Sent:** | Tuesday, March 27, 2018 10:39 AM |
| **To:** | Eric Cook |
| **Subject:** | Wolfson v Bayview |

Dear Eric:

Today I discovered to my horror that we are late in responding to Bayview's written discovery propounded January 19th, it appears.

I had a significant medical issue and missed the date.

I will have full responses to you by Friday.  Please advise if you will agree to this belated request for an extension.

Thank you,
Beth

--
Beth K. Findsen, Esq
Law Office of Beth K. Findsen, PLLC
7337 E. Russet Sky Dr
Scottsdale, AZ 85266
findsenb@gmail.com
(480)659-7631 (office)

1

# EXHIBIT D

**Kim Lepore**

---

| | |
|---|---|
| **From:** | Eric Cook |
| **Sent:** | Tuesday, March 27, 2018 2:27 PM |
| **To:** | 'Beth Findsen' |
| **Cc:** | Eric Cook; Joseph Tirello |
| **Subject:** | RE: Wolfson v Bayview |

Beth,

I cannot agree to your request for an extension a month after the discovery responses were due.  I served the Request for Admissions, Request for Production of Documents and Non-Uniform Interrogatories on January 19, 2018.  I then filed a notice of service of the written discovery, with the court, on January 23, 2018.  The discovery responses were due thirty five days from January 19, 2018 given the use of U.S. Mail.  By my calculations,  the responses were due on or before February 23, 2018.

To date, we have worked in a professional manner.  We both have extended professional courtesies to each other.  And I appreciate such professional courtesies.  Unfortunately, any proposed courtesy or extension will not reverse the fact that the requests for admissions are deemed admitted.

I will need the responses to the Request for Production of Documents and Non-Uniform Interrogatories as soon as possible.  Please confirm that the responses will be served by Friday, March 30, 2018.

Let me know if you have any questions or concerns.  Thank you

Eric

Eric L. Cook
Managing Attorney
Zieve, Brodnax & Steele, LLP
3550 N. Central Ave., Suite 625
Phoenix, Arizona 85012
**(P)** 602-282-6188 x 203  **(eFAX)** 602-865-8086
**(E)** ecook@ZBSlaw.com **(W)** www.ZBSlaw.com

Admitted to the practice of law in Arizona

*Representation in:* **CA | AZ |  NV |  WA | OR**

**Please consider the environment before printing this email. Reduce.  Re-Use.  Recycle.**

Notice of Confidentiality & Electronic Privacy Notice:
This e-mail message and its attachments, if any, is inclusive and protected by electronic communications privacy laws and is proprietary in nature to Zieve, Brodnax & Steele, LLP ("Company"), and is intended solely for the use of the addressee hereof.  Please be advised that this message, and the attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not a specified and intended recipient, you are hereby notified and strictly prohibited from reading, retaining, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. The accidental delivery of this message to any person other than the intended recipient does not waive any rights, privilege or protection.  If you have received this message in error, please promptly notify the "Company" by reply e-mail or telephone and immediately delete this message from your system. You are further advised that this e-mail and any response thereto is the property of the Company and can be accessed and reviewed by the Company at any time.

**From:** Beth Findsen [mailto:findsenb@gmail.com]
**Sent:** Tuesday, March 27, 2018 10:39 AM

**To:** Eric Cook
**Subject:** Wolfson v Bayview

Dear Eric:

Today I discovered to my horror that we are late in responding to Bayview's written discovery propounded January 19th, it appears.

I had a significant medical issue and missed the date.

I will have full responses to you by Friday.  Please advise if you will agree to this belated request for an extension.

Thank you,
Beth

--
Beth K. Findsen, Esq
Law Office of Beth K. Findsen, PLLC
7337 E. Russet Sky Dr
Scottsdale, AZ 85266
findsenb@gmail.com
(480)659-7631 (office)

# EXHIBIT 3

NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

RONALD A. WOLFSON, *Plaintiff/Appellant*,

*v.*

BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING LP; BANK
OF NEW YORK MELLON; COUNTRYWIDE HOME LOANS, INC.;
RECONTRUST COMPANY, N.A.; and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., *Defendants/Appellees*.

No. 1 CA-CV 12-0691
FILED 03/11/2014

_____

Appeal from the Superior Court in Yavapai County
No.  P1300CV201100207
The Honorable Kenton D. Jones, Judge

**AFFIRMED**

_____

COUNSEL

Ronald A. Wolfson, Prescott
*Plaintiff/Appellant In Propria Persona*

Bryan Cave LLP, Phoenix
By Robert W. Shely, Gregory B. Iannelli
*Counsel for Defendants/Appellees*

WOLFSON v. B OF A, et al.
Decision of the Court

_____

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Kent E. Cattani joined.

_____

**G E M M I L L,** Judge:

**¶1**        Ronald A. Wolfson appeals the trial court's dismissal of his claims for quiet title, declaratory judgment, and a violation of Arizona's false recording statute, Arizona Revised Statute ("A.R.S.") § 33-420.  For the following reasons, we affirm the dismissal.

**BACKGROUND**

**¶2**        Wolfson executed a promissory note secured by a deed of trust on his home in May of 2007.  The deed of trust identified Quicken Loans as the lender and Title Source as the trustee.  It named Mortgage Electronic Registration System, Inc. ("MERS") as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."[1] The deed of trust provided that MERS held "only legal title" to the lender's interests but had the right to act on the lender's behalf regarding those interests.  Wolfson was notified in June 2007 that Quicken Loans was transferring the servicing rights to Countrywide, but he did not receive notice that his note had been actually transferred or assigned.  Both the note and deed of trust provided, however, that they could be transferred without notice to Wolfson.

_____

[1]  MERS is a private corporation that administers a national electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans.  Members assign their interests to MERS, and MERS becomes the mortgagee of record.  When one member transfers an interest to another member, MERS privately tracks the assignment but remains the mortgagee of record, thereby allowing members to sell their interests without having to record the transactions in the public record.  *Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. 215, 216 n.1, ¶ 3, 311 P.3d 237, 238 n.1 (App. 2013); *see also Steinberger v. McVey ex rel. Maricopa County*, 1 CA-SA 12-0087, 2014 WL 333575, at *10-11 n.9, ¶ 28 (Ariz. App. Jan. 30, 2014).

WOLFSON v. B OF A, et al.
Decision of the Court

¶3            Wolfson defaulted on the note in June of 2010.  Five months later, MERS assigned "all beneficial interest under [the Wolfson] deed of trust . . . together with the note" and "all rights accrued or to accrue under said deed of trust" to Defendant/Appellee The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-17CB Mortgage Pass-through Certificates, Series 2007-17CB ("Mellon").  On the same date, Mellon recorded a substitution of trustee appointing ReconTrust Company as successor trustee, and ReconTrust Company recorded a notice of trustee's sale of Wolfson's property.

¶4            Wolfson filed suit seeking an injunction to stop the trustee's sale.  ReconTrust voluntarily cancelled the sale.  After Wolfson amended his complaint, the Defendants filed a motion to dismiss the amended complaint under Rule 12(b)(6) of the Arizona Rules of Civil Procedure for failure to state a claim on which relief can be granted.  The trial court granted the Defendants' motion.  Wolfson filed a motion for new trial, which the court denied.  Wolfson timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1) and (5)(a).

## ANALYSIS

¶5            We review the dismissal of a complaint de novo.  *Coleman v. City of Mesa,* 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012).  In reviewing the dismissal of a complaint for failure to state a claim, we accept as true the well pled facts alleged in the complaint and will affirm the dismissal only if the plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof.  *Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224, ¶ 4, 954 P.3d 580, 582 (1998).  We need not, however, accept conclusions of law or unwarranted deductions of fact.  *Aldabbagh v. Arizona Dep't of Liquor Licenses & Control,* 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (App. 1989).  A complaint's exhibits, or public records regarding matters referenced in a complaint, are not "outside the pleading," and courts may consider such documents without converting a Rule 12(b)(6) motion into a summary judgment motion.  *Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d at 867.

## I.      Quiet Title Claim

¶6            Arizona law does not allow a homeowner to quiet title as to the beneficiary of the deed of trust until the debt on the home is paid or offered to be paid.  *Farrell v. West,* 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941).  Wolfson nevertheless argues that the trial court erred in applying

WOLFSON v. B OF A, et al.
Decision of the Court

the "tender rule" to bar his quiet title claim against Mellon and that doing so offended basic notions of due process.   He asserts that if the tender rule bars his action then only the wealthy - those in a position to tender a large lump sum payment - would have access to the courts to quiet title to their property.

¶7        Wolfson admits he owes some entity the outstanding balance of the note, but he denies owing it to Mellon.  He contends that his note was never transferred to Mellon, and because the note and deed of trust are inseparable, citing *Hill v. Favour*, 52 Ariz. 561, 569, 84 P.2d 575 (1938), the beneficial interest under the deed of trust was never transferred to Mellon.  Thus, Wolfson concludes that Mellon has no interest in his property.

¶8        The trial court dismissed Wolfson's quiet title claim under *Farrell* because Wolfson had not paid or tendered payment of the outstanding balance of the note.   Wolfson argues that *Farrell* is distinguishable from this case because the identity of the party owed money under the mortgage (the defendant-mortgagee or his assignee) was not at issue in *Farrell*, while it is at issue here.   Wolfson claims that he owes no amount to Mellon because MERS lacked authority to transfer the note, so the assignment of the note from MERS to Mellon and the beneficial interest under the deed of trust was invalid.   Because he supposedly owes no money to Mellon, Wolfson argues that he should not be required to pay off the note in order to avoid dismissal of his quiet title claim.

¶9        We need not decide whether *Farrell* is distinguishable from this case because Wolfson's argument about the validity of the note's assignment from MERS to Mellon is a legal conclusion that we reject.   *See Aldabbagh*, 162 Ariz. at 417, 783 P.2d at 1209.  He arrives at this conclusion based on an unwarranted factual deduction that, because he never received notice of any transfer of his note from Quicken Loans to an assignee, no such transfer took place.  However, the note and the deed of trust both inform Wolfson that the lender may transfer the note at any time without notifying him.  The fact that Wolfson received no notice of any transfer does not require the conclusion that no transfer took place.[2]

---

[2]   Wolfson further asserts that the note can only be negotiated or transferred pursuant to A.R.S. § 47-3201(B), which was not done by MERS.  Again, this is an unwarranted legal conclusion based on Wolfson never

WOLFSON v. B OF A, et al.
Decision of the Court

¶10         The note and the deed of trust are evidence of the borrower's debt and the right to foreclose for failure to repay the debt.  *Steinberger*, 1 CA-SA 0087, at *9, ¶25.  The note and deed of trust demonstrate that MERS had the power to act as the agent of any valid note holder under the terms of the deed of trust.  The plain language of the deed of trust states that MERS was authorized to act as nominee for Quicken Loans and its "successors and assigns."   MERS was also designated as the beneficiary under the deed of trust, which provided that MERS had the right to exercise the lender's interests.

¶11         In cases such as these, MERS is the mortgagee of record and may assign the note and the deed of trust without regard to the lender's legal status.  *Sitton*, 233 Ariz. at 221, ¶ 28, 311 P.3d at 243 (citing *Rosa v. Mortgage Electronic Sys., Inc.*, 821 F. Supp. 2d 423, 431 (D. Mass. 2011)) MERS had the authority to transfer the beneficial interest in the deed of trust and the note.  According to the assignment, MERS transferred the beneficial interest to Mellon.  Contrary to Wolfson's assertion, Mellon is not an unauthorized party to whom Wolfson owes no money.  As the lender's assignee of record, Mellon is owed all outstanding amounts on the note, and Wolfson must pay or tender payment of the amount owed under the note to maintain an action to quiet title.  *See Farrell*, 57 Ariz. at 491, 114 P.2d at 911.  Accordingly, the trial court did not err in dismissing Wolfson's quiet title claim.

## II.      Declaratory Judgment

¶12         Wolfson also sought a declaratory judgment that Mellon has no legal interest in his property because MERS had no authority to transfer the note.  For the same reasons that we affirm the dismissal of Wolfson's quiet title claim, the trial court did not err in dismissing Wolfson's request for declaratory judgment.

## III.     A.R.S. § 33-420, Arizona's false recording statute

¶13         Finally, Wolfson appeals the trial court's dismissal of his claim under A.R.S. § 33-420(A).   Specifically, Wolfson alleges that

---

receiving notice of any transfer.  The note itself, however, provides for transfer without notifying the borrower.

WOLFSON v. B OF A, et al.
Decision of the Court

Appellees knew or had reason to know that the assignment, substitution of trustee, and notice of trustee's sale were ineffectual because they were not "properly notarized." Specifically, Wolfson points out that the recorded documents were signed in the wrong order:  first, the notice of trustee's sale; next, the substitution of trustee; and, finally, the assignment.[3]  Because Wolfson presumes that MERS had no authority to transfer the note to Mellon, Wolfson also alleges that the recorded documents contained material misstatements or false claims.

**¶14**        This court has recently held that the recorded documents that Wolfson challenges fall within the scope of A.R.S. § 33-420(A).  *See Stauffer v. U.S. Bank Nat. Ass'n*, 233 Ariz. 22, ¶ 15, 308 P.3d 1173, 1177-78 (App. 2013); *Sitton*, 233 Ariz. at 219, ¶ 17, 311 P.3d at 241.  Thus, the trial court erred by dismissing Wolfson's complaint on the grounds that such documents *do not* fall within the scope of A.R.S. § 33-420(A).  Nonetheless, we may affirm the trial court's grant of a motion to dismiss if it is correct for any reason.  *Old Republic Nat. Title Ins. Co. v. New Falls Corp.*, 224 Ariz. 526, 530, ¶ 19, 233 P.3d 639, 643 (App. 2010).

**¶15**        We reject Wolfson's claim that the recorded documents had no effect because they were executed in the wrong order.   A recorded document is effective if no credibly arguable basis exists to question the validity of the document.  *See Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 395, ¶ 11, 199 P.3d 646, 650 (App. 2008).   Although the documents were apparently signed in the wrong order, all were signed on the same day and recorded in the proper order the following day.  More importantly, all of the executing entities apparently had the authority to sign the recorded documents, so the documents were not void.  We also reject Wolfson's contention that material misrepresentation or false claims exist in the recorded documents because that contention stems from Wolfson's argument that MERS did not have authority to assign the note to Mellon.   This argument fails for the reasons stated above.    Thus, Wolfson has not established that the recorded documents contained misrepresentations (material or otherwise) or false claims.

---

[3]  Of course, the correct order would have been to sign the assignment to Mellon, then Mellon's substitution of trustee, and finally the substituted trustee's notice of trustee's sale.

WOLFSON v. B OF A, et al.
Decision of the Court

## CONCLUSION

¶16          For the foregoing reasons, we affirm the trial court's dismissal of Wolfson's first amended complaint.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

# EXHIBIT 4

Atkinson-Baker, Inc.
www.depo.com

1

2              UNITED STATES DISTRICT COURT

3                 DISTRICT OF ARIZONA

4    ----------------------------------------X

5    RONALD WOLFSON,

6              PLAINTIFF,
     vs.

7                              No. 3:17-cv-08258-DMF

8    BAYVIEW LOAN SERVICING, LLC;
     THE BANK OF NEW YORK, MELLON FKA
9    THE BANK OF NEW YORK, AS TRUSTEE
     FOR THE CERTIFICATEHOLDERS OF THE
10   CWALT, INC., ALTERNATIVE LOAN
     TRUST 2007-17B MORTGAGE
11   PASSTHROUGH CERTIFICATES,
     SERIES 2007-17B,

12
              DEFENDANTS.
13   ----------------------------------------X

14

15            DEPOSITION OF MYRON DE SA

16                 Phoenix, Arizona
                 September 28, 2018
17                  9:42 a.m.

18

19   ATKINSON-BAKER, INC.
     Arizona Registered Firm R1029
20   1.800.288.3376 www.depo.com

21

     REPORTED BY:
22   LISA A. NANCE, RPR, CR (AZ)
     Registered Professional Reporter
23   Certified Reporter
     Certificate No. 50349

24
     Job No. AC0A115

25

**CERTIFIED COPY**

Atkinson-Baker, Inc.
www.depo.com

```
1              DEPOSITION OF MYRON DE SA, 3(B)(6)

2    DESIGNEE FOR BAYVIEW LOAN SERVICING, LLC, began at

3    9:42 a.m. on September 28, 2018, at Zieve, Brodnax

4    and Steele, 2550 North Central Avenue, Suite 623,

5    Phoenix, Arizona, before Lisa A. Nance, RPR, CR,

6    Certified Reporter, Arizona Certificate Number

7    50349, in and for the State of Arizona, in

8    compliance with ACJA Section 7-206 (J)(3)(b) and

9    pursuant to the Rules of Civil Procedure.

10

11   APPEARANCES:

12

13   FOR THE PLAINTIFF:

14   THE LAW OFFICES OF BETH K. FINDSEN, PLLC
     BY:  MS. BETH K. FINDSEN
15   7279 East Adobe Drive, Suite D-12O
     Scottsdale, Arizona 85255
16   findsenb@gmail.com

17

18   FOR THE DEFENDANTS:

19   ZIEVE, BRODNAX & STEELE, LLP
     BY:  MS. KIM LEPORE
20   3550 North Central Avenue, Suite 625
     Phoenix, Arizona 85004
21   klepore@sbslaw.com

22              The following proceedings were had:

23

24

25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                               Phoenix, Arizona
                                 September 28, 2018
 2                               9:41 a.m.

 3

 4                        MYRON DE SA,

 5    called as a witness herein, having been first duly sworn

 6    by the Certified Court Reporter, was examined and

 7    testified as follows:

 8

 9                        EXAMINATION

10    BY MS. FINDSEN:

11         Q.   Good morning.  My name is Beth Findsen, and I

12    represent the plaintiff in this lawsuit.  You understand

13    that?

14         A.   Yes.

15         Q.   All right.  And what is your name?

16         A.   Myron De Sa.

17         Q.   Myron De Sa.  What -- where do you work?

18         A.   Bayview Loan Servicing, LLC.

19         Q.   What is your position with Bayview?

20         A.   My title is litigation manager.

21         Q.   What does that entail?

22         A.   Basically review all of our business records in

23    preparation for trials, depositions, mediations.  I also

24    handle a lot of loss mitigation work as well, for our

25    borrowers.
```

Atkinson-Baker, Inc.
www.depo.com

1      A.    That's correct.

2      Q.    To Countrywide Home Loans, Inc.?

3      A.    That's correct.

4      Q.    And the stamp on the right is signed by

5   Countrywide Home Loans, Inc., correct?

6      A.    That's correct.

7      Q.    And it's blank, right?

8      A.    That's correct.

9      Q.    That's what you call endorsed in blank?

10     A.    Correct.

11     Q.    If we look at Exhibit 13, which is the Deed of

12  Trust, you testified earlier that the only contracts

13  between Mr. Wolfson and the lenders for Bayview or BONYM

14  would be the note and the mortgage or the Deed of Trust;

15  is that correct?

16     A.    Correct.

17     Q.    So if you look on page 6 of the Deed of Trust,

18  paragraph 5, can you read the first two lines of

19  paragraph 5 that is entitled "Property Insurance"?

20     A.    "Borrower shall keep the improvements now

21  existing or hereafter erected on the property insured

22  against loss by fire, hazards, including within the term

23  extended coverage."

24     Q.    Okay.  That's good enough.

25          And then the first sentence of the next

Atkinson-Baker, Inc.
www.depo.com

1  paragraph, if you will read that, please?

2       A.   "If borrower fails to maintain any of the

3  coverages described above, lender may obtain insurance

4  coverage at lender's option and borrower's expense."

5       Q.   Then read the second to last sentence in that

6  same paragraph, starting with "any amounts."

7       A.   "Any amounts disbursed by lender under the

8  section F shall become additional debt of borrower

9  secured by security instrument."

10      Q.   Section 5, is that right; not section F?

11      A.   I'm sorry, Section 5, yes.

12      Q.   And then the next page, page 7 of the Deed of

13 Trust, paragraph 7 is entitled "Preservation Maintenance

14 and Protection of the Property; Inspections;" is that

15 correct?

16      A.   That's correct.

17      Q.   Can you read the first two sentences -- no,

18 first three?

19      A.   "Borrower shall not destroy, damage or impair

20 the property, allow the property to deteriorate or commit

21 waste on the property.  Whether or not the borrower is

22 residing on the property, borrower shall maintain the

23 property in order to prevent the property from

24 deteriorating or decreasing in value due to its

25 condition."

Atkinson-Baker, Inc.
www.depo.com

1       Q.    Paragraph 9 is entitled "Protection of Lender's

2   Interest in the Property and Rights Under the Security

3   Interest;" is that correct?

4       A.    That's correct.

5       Q.    And the very first sentence says, "If (A)" --

6   parentheses A -- "borrower fails to perform the covenants

7   and agreements contained in this instrument, then" -- can

8   you start reading from "then"?   "Then lender."

9       A.    Oh, sorry.

10           "Then lender may do and pay for whatever is

11   reasonable or appropriate to protect lender's interest in

12   the property and rights under the security instrument,

13   including protecting and/or assessing the value of the

14   property and securing and/or repairing the property."

15       Q.    Okay.

16           And then the first sentence of the next

17   paragraph?

18       A.    The same, down here?

19       Q.    No.   The first sentence of the next paragraph.

20       A.    "Any amounts disbursed by lender under this

21   Section 9 shall become additional debt of borrower

22   secured by the security instrument."

23       Q.    And do you believe that this is what allows

24   Bayview and BONYM to advance insurance and other property

25   preservation expenses for the borrower?

Atkinson-Baker, Inc.
www.depo.com

```
1        A.    Absolutely.
2              MS. LEPORE:  That's all I have.
3              MS. FINDSEN:  Pass.  We're done.
4              (Whereupon, the deposition concluded at
5     approximately 12:38 p.m.)
6
7
8                          *   *   *   *
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Atkinson-Baker, Inc.
www.depo.com

ACOA115(A)

1

2

3

4   STATE OF ARIZONA        )
                            )  SS.
5   COUNTY OF MARICOPA      )

6

7

8          I, the undersigned, declare, under penalty of

9   perjury, that I have read the foregoing transcript, and I

10  have made any corrections, additions or deletions that I

11  was desirous of making; that the foregoing is a true and

12  correct transcript of my testimony contained therein.

13         EXECUTED this 13ᵗʰ day of _NOVEMBER_____,

14  2018, at _FORT LAUDERDALE_, ~~Arizona~~ FLORIDA.

15

16

17         _____

18         MYRON DE SA

19

20

21

22

23

24

25

                                                        115

                    30(b)(6) Myron De Sa
                    September 28, 2018

Atkinson-Baker, Inc.
www.depo.com

```
 1   STATE OF ARIZONA       )

 2   COUNTY OF MARICOPA     ) SS.

 3       BE IT KNOWN that the foregoing proceedings were

 4   taken before me; that the witness before testifying was

 5   duly sworn by me to testify to the whole truth; that the

 6   foregoing pages are a full, true, and accurate transcript

 7   of the proceedings, all done to the best of my skill and

 8   ability; that the proceedings were taken down by me in

 9   shorthand and thereafter reduced to print under my

10   direction.

11       I CERTIFY that I am in no way related to any of the

12   parties hereto nor am I in any way interested in the

13   outcome hereof.

14       Review and signature was requested.

15       I CERTIFY that I have complied with the ethical

16   obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206

17   J(1)(g)(1) and (2).

18       Dated at Phoenix, Arizona, October 17, 2018.

19   _____
     LISA A. NANCE, RPR, CR
20   Certified Reporter; Arizona CR No. 50349

21           *    *    *    *    *    *    *

22       I CERTIFY that Atkinson-Baker, Inc., Court Reporters
     has complied with the ethical obligations set forth in
23   ACJA 7-206 (J)(1)(g)(1) through (6).
     _____
24   ATKINSON-BAKER, INC., COURT REPORTERS:
     Arizona Registered Reporting Firm R1029
25
```

116

30(b)(6) Myron De Sa
September 28, 2018